[No. 13991. Department Two.   March 6, 1917.]

THE STATE OF WASHINGTON, *on the Relation of the City of Seattle, Plaintiff,* v. CLARK V. SAVIDGE, *Commissioner of Public Lands, et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS— SHORE LANDS — RIGHTS OF PURCHASERS — PRIORITY — PROCEEDINGS— STATUTES.   Where applications to purchase shore lands were made by upland owners, under their preference right, and confirmed prior to the making of municipal assessments for local improvements, the rights of the purchasers became vested and the assessments could not be added to the appraised value of the land as part of the purchase price, as provided by Rem. Code, § 6880, in cases where "the state has made no lease or contract" with reference to lands "against which an assessment has been made for local improvements;" and it is immaterial that the formal contracts had not been issued prior to the certification of the assessments to the state officers.

PUBLIC LANDS—SHORE LANDS — HARBOR AREAS — LAKES — OWNERSHIP.   Const., art. 15, providing for the location and establishment of "harbor lines in the navigable waters of all harbors," in front of the corporate limits of cities applies to navigable rivers and lakes as well as tide waters, notwithstanding further limitations therein as to the disposition of tide lands not applicable to inland harbors.

EVIDENCE—JUDICIAL NOTICE.   The courts take judicial notice that Lake Union is a navigable lake open to general navigation, subject to the control of the national government.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS— PUBLIC LANDS—SHORE LANDS.   Under art. 17, § 1, asserting state ownership in the beds and shores of all navigable waters up to the line of ordinary high water, and art. 15, which provides that the state shall never give, sell, or lease to any person any rights what-

[1]Reported in 163 Pac. 738.

ever beyond harbor lines, the legislature could not, by Rem. Code, § 6872, authorizing the assessment of all lands except tide lands, sanction special assessments for local improvements against harbor areas located and reserved in the navigable waters of a lake.

Application for a writ of mandate, filed in the supreme court February 7, 1917.  Denied.

*Hugh M. Caldwell* and *Walter F. Meier*, for plaintiff.

*The Attorney General* and *R. E. Campbell, Assistant,* for respondents.

HOLCOMB, J.—The city of Seattle, by this original proceeding in mandamus, seeks to compel the commissioner of public lands and the state auditor to certify to the legislature for payment certain local improvement assessments made by condemnation by the city.

The defendants in their answer object to the certification of the several assessments upon either one of the following grounds:  (1) That certain of the assessments have been or are in process of certification; (2) that certain of the lands were sold under the preference provisions of chapter 3, Laws of 1907, p. 4, prior to the making of the assessments, and contracts of sale have been issued thereon since the assessments were made; (3) that the assessments are in part upon harbor areas.

In so far as the assessments involved herein have been certified or are now in process of certification, there is now no necessity for the relief which the petitioner seeks.

By the answer of the defendants it is shown that the assessments made pursuant to ordinance No. 30,503 of the city of Seattle for the improvement of Fairview avenue, which were confirmed in cause No. 93,993 of the superior court for King county, have all been certified to the state auditor by the commissioner of public lands and will in due course be certified to the present legislature for payment. This eliminates any necessity for the consideration of that

portion of the petition involving the assessments for Fairview avenue.

With respect to the other assessments, the defendants assert that the following provisions of law justify their refusal so to certify: (1) That assessments on state lands under contract are not subject to certification under Rem. Code, § 6880; (2) that harbor area is not subject to local improvement assessments.

As to the first class, Rem. Code, § 6880, is as follows:

"Where the state has made no lease or contract, or has granted no right with reference to any such lands or any part thereof, against which an assessment has been made for local improvements, the state shall at the next session of the legislature after such improvement is made, if it still owns the land, appropriate sufficient money to pay for such improvements, or the person entitled to such money shall apply to the proper state officers to have such lands sold in the manner provided by law, and if the said lands have not been appraised, the state land commissioner shall, upon said application being made, cause the same, exclusive of benefits, to be appraised, and the assessment for such improvement shall be added to the appraised valuation of all such tracts owned by the state, and such land commissioner shall cause the sale of such lands to be made in the manner provided by law, but no sale shall be made for less than the appraised value, plus the assessment, against the tract to be sold. When such lands are sold, the proper state officers are authorized to pay to the party entitled to receive the same, the amount or amounts of said assessments for local improvements."

The confirmation of the assessment roll for the improvement of Valley street and South Lake avenue under ordinance No. 20,186 of Seattle, involved in this proceeding, was made on April 1, 1912. All of the lands shown to be under contract of sale as set forth in the answer of the defendants were sold by the state under the preference right provisions of chapter 3, Laws of 1907, p. 4, and the awards were confirmed to such preference right purchasers under contracts of sale on December 10, 1907, and February 21,

1910. The contracts of sale were issued to such preference
right purchasers or their assignees on June 7 and June 17,
1913, respectively.

It will be observed that, under the answers of the de-
fendants, the owners of the upland contiguous to the tracts
here involved had made application under the preference
right provisions of chapter 3, Laws of 1907, p. 4, prior to
the proceedings in condemnation and certification of the
assessments made by the city. These applications were con-
firmed by the state authorities in December, 1907, and Feb-
ruary, 1910, respectively, which also was prior to the certi-
fication of the assessments by the city. The contracts of
sale, however, were not issued to such preference right pur-
chasers or their assignees until June 7 and June 17, 1913,
respectively.

The state asserts that the certification provided for under
§ 6880, *supra*, "is expressly conditioned upon there being
*no contract or no right granted with reference to any such
lands or any part thereof* at the time the certification of the
assessments for the local improvement is demanded"; that
the provisions of chapter 3, Laws of 1907, p. 4, constitute
a provisional grant of the shore lands in Lake Union adja-
cent to their lots and blocks to the upland owners; and that,
upon the applications being made and accepted and the ap-
praisement of the lands made to the shore land purchasers,
their preference rights to purchase were confirmed, their
rights were complete, and the state's rights were thereafter
subject to the contracts of sale then or ·thereafter issued.

There is no question as to the regularity and validity of
the city's proceedings to improve the streets referred to and
to assess property thereunder; nor as to the notice to the
state at the time of the proceedings that the lands involved
were to be affected. The sole question to be determined is
whether or not the defendants are justified in refusing certi-
fication because of the laws relating thereto and the condi-

tion of the shore lands at the time of the demand for certification.

We are convinced that, since the applications to purchase these shore lands were made prior to the assessment proceedings under the provisions of the law granting to the adjacent upland owners a preference right to purchase the same, such rights became vested under the award of the board of state land commissioners made prior to the time the assessments were made, and it was immaterial that formal contracts had not been issued by the state authorities prior to the certification of the assessments by the city for payment as provided in § 6880, *supra*. That right was confirmed to them under the provisions of the law according to an appraised valuation of the lands in question made prior to the assessments. The state never had any opportunity to add the present assessments to the appraised value of the lands in question so as to recover the assessments as part of the purchase price; and the purchasers had a vested right under the provisions of the law under which they applied to purchase the same at their appraised value, with interest thereon from date of the expiration of the preference period of purchase to the date of contract. Therefore, the assessments thereafter made could not be added to the appraised value of the shore lands, and such preference right of purchase became vested subject to the existing appraisements and could not be impaired by such proceedings as against the state. Under the language of the statute, "the right had been granted" with reference to such lands at the time the certification of the assessments for the local improvement was made.

The second question, as to whether the city has a right to levy assessments upon the certain unnumbered tracts of land lying adjacent to the numbered lots and blocks which the state contends are harbor areas, is more difficult of solution.

The relator contends that the so-called harbor areas are state lands; that the law governing the case is found in chapter 154, Laws of 1909, p. 596 (Rem. Code, § 6872 *et seq.*), providing that "all lands except tide lands, held or owned by the state of Washington in fee simple (in trust or otherwise), . . . may be assessed and charged for the cost of local improvements specially benefiting such lands . . ." In other words, the legislature, while under no obligation so to do and when no assessment could be levied without its sanction, expressly authorized by law the levy of an assessment upon any and all property owned by the state except tide lands, to the extent that such property was specially benefited by the improvement for the cost of which such levy was made.

In support of this contention, it is argued that the state, in § 1, art. 17, of the constitution, expressly asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high water within the banks of all navigable rivers and lakes. Article 15 of the state constitution denies power to the legislature to authorize a sale or disposition of portions of harbor areas. Relators assert, however, that this limitation in the constitution has no reference to any so-called harbor areas in fresh water, but applies solely to harbor areas in tide waters.

Article 15 provides that the legislature shall provide for the appointment of a commission whose duty it shall be "to locate and establish *harbor lines in the navigable waters of all the harbors*, estuaries, bays and inlets of this state, wherever such navigable waters lie within or in front of the corporate limits of any city or within one mile thereof upon either side." It further provides that the state shall never give, sell, or lease to any private person, corporation, or association, any rights whatever in the water beyond such harbor lines; nor shall any of the area, lying between any harbor line and the line of ordinary high tide and within not

less than fifty feet or more than 600 feet of such harbor line as the commission shall determine, be sold or granted by the state, nor its rights to control the same relinquished; but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce.

We are unable to agree with the narrow construction contended for by relator. This article of the constitution provides for the locating and establishing of harbor lines in the navigable waters of all harbors; and while there are further limitations as to the disposition of lands lying between any harbor lines and the lines of ordinary high tide and further, these must be construed as further and especial limitations where such harbors are located in tidal waters and on tide lands subjacent and suitable "for landings . . . and other conveniences of navigation," and not within the first provision of the article that it is the duty of the legislature to provide for the locating and establishing of harbor lines in the navigable waters of all harbors, and prohibiting relinquishment and disposition of the same.

We take judicial notice of the fact that Lake Union is a navigable lake open to general navigation and subject, therefore, to the superior control of the national government for the purpose of regulating navigation and encouraging commerce. A harbor is "a port or haven for ships; a sheltered place, natural or artificial, on the coast of a sea, lake or other body of water where ships may find protection." New Standard Dictionary.

It is as much the duty of the state authorities, defined by art. 15 of the constitution, to provide for the location and establishment of harbor areas in inland navigable waters, if within or in front of or within one mile of the corporate limits of any city or town, as to establish the same in salt or sea water. These harbor areas are established for the primary purpose of aiding navigation and commerce. Their potential value and importance are not as lands but as waters.

The constitution evidently intended them to be so considered, and therefore provided against their alienation or disposition. That this is the general policy of the state seems to be assumed by the decisions of this court in *State v. Sturtevant*, 76 Wash. 158, 135 Pac. 1035, 138 Pac. 650, and *Puget Mill Co. v. State*, 93 Wash. 128, 160 Pac. 310.

Our conclusion is that, on account of restrictions found in art. 15 of the constitution, the legislature has no power to grant "any rights whatever" in or to, or to sanction the levy of special assessments for local public improvements against, harbor areas located and reserved in the navigable waters of the state such as Lake Union.

From these considerations the peremptory writ of mandamus is denied.

ELLIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.