[No. 19704.  Department One.  April 5, 1926.]

THE STATE OF WASHINGTON et al., *Respondents*, v. CITY
OF SEATTLE et al., *Appellants*.[1]

[1] MUNICIPAL CORPORATIONS (280) — IMPROVEMENTS — ASSESSMENT
LIENS—LIMITATIONS. Under Rem. Comp. Stat. §§ 9244 and 9261,
the lien of benefits against property in eminent domain proceed-
ings is a perpetual one until the assessment is paid, and is not
subject to the statute of limitations.

[2] MUNICIPAL CORPORATIONS (209)—PUBLIC IMPROVEMENTS—SHORE
LANDS—ASSESSMENT. Where applications were made by upland
owners under their preference right to purchase shorelands, and
confirmed prior to the making of municipal assessments for local
improvements; the rights of the purchasers became vested, and
the lands are not subject to assessment while the state was the
owner of the fee.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered July 10, 1925, in favor
of the plaintiff, upon overruling a demurrer to a com-
plaint to quiet title to shore lands. Affirmed.

*Thomas J. L. Kennedy* and *J. Ambler Newton*, for
appellants.

*The Attorney General, Bronson, Robinson & Jones,
C. A. Riddle*, and *James Kiefer*, for respondents.

HOLCOMB, J.—This is an action to quiet title, brought
by the state and its grantee, and to cancel an assess-
ment for benefits levied upon a portion of block 65,
Lake Union Shore Lands, for the payment of awards
in the condemnation of Valley street and others, under
ordinance No. 20186 of Seattle. Valley street lies along
the south shore of Lake Union, and block 65 is on the
east shore of the lake. Ordinance No. 20186 is alleged
in the complaint to have been passed and approved on
February 19, 1909, providing for the laying off, open-

[1]Reported in 244 Pac. 688.

ing, widening, extending and establishing, of Valley street from Fairview avenue to the shore line of Lake Union.

It is also alleged that, on May 14, 1909, Seattle caused to be filed in the superior court a proceeding for the condemnation of the property required for, and the ascertainment of damages caused by, the laying off, opening, widening, extending, and establishing of Valley street under the above mentioned ordinance; that that proceeding resulted in sundry verdicts rendered in favor of property owners whose properties were taken or damaged, and judgments entered in favor of such property owners in accordance with the verdicts, against the city, and that on April 1, 1912, an assessment roll was approved and confirmed by the court by judgment entered on that day in the case, which assessment roll had theretofore been prepared by the eminent domain commission of the city in the manner required by statute; that such assessment roll was, on April 4, 1912, filed in the office of the treasurer of the city, and due notice given for the payment of the assessment shown upon the roll; such assessments were payable before June 15, 1912, and became and were delinquent on June 16, 1912, thereafter bearing interest by virtue of the statute at ten per cent per annum; that on July 19, 1907, the Pacific Board & Paper Company, a corporation, the owner of the uplands abutting upon the premises hereinafter described, and as such entitled to preference right of purchase, made application for the purchase of the following described lands, to wit: that portion of block 65, Lake Union Shore Lands, lying southwesterly of a line described as follows: (then describing the tract by metes and bounds), all in King county, Washington.

It is then alleged that, on December 10, 1907, the

commissioner of public lands of the state approved the application and awarded to the Pacific Board & Paper Company the preference right of purchase of the premises above described, and a contract of sale was entered into on June 9, 1913, between the state and the Pacific Board & Paper Company, wherein and whereby it was agreed that the state would sell, and the Pacific Board & Paper Company would buy, the shore lands above described for the price of $12,498, to be paid in ten annual installments, with interest at six per cent, payable annually; that thereafter, by sundry mesne assignments filed in the office of the commissioner of the state, the contract was assigned and transferred to the plaintiff the Lake Union Dry Dock & Machine Works, a corporation; that plaintiff the Lake Union Dry Dock & Machine Works and its assigns have paid to the state all of the purchase price due under the contract, and are now entitled to a deed therefor from the state, having paid all taxes on the property in question, and all assessments thereon except those for the Valley street condemnation, as above set forth; that the portion of block 65, Lake Union Shore Lands hereinbefore described was assessed in the cause heretofore mentioned by the city as the property of plaintiff the state, in the gross sum of $1,123.75, no part of which has ever been paid. It is further alleged that the assessment of the premises by the court was illegal, unauthorized, and void in this, that the state of Washington was at all times the legal owner of the fee of the premises, and the application to sell the same had been made, as heretofore set out, by the upland owner entitled to the preference right of purchase, and the application had, at the time of making the assessment, been favorably acted upon and purchase awarded to the applicant, and a contract

was in process of maturing; that for that reason the premises cannot be legally assessed to, or as the property of the state, as was attempted to be done by the city in that proceeding. That more than ten years have elapsed since delinquency, and no proceedings have been taken, had or begun by the city or any one else, to enforce the assessment, and all warrants outstanding against the assessment roll, or the fund to be raised thereby, have been paid, satisfied and cancelled. It is then alleged that the assessment roll was prepared in the office of the defendant treasurer of the city and constitutes a cloud upon the title of plaintiffs to the premises.

To this complaint, the defendant demurred on the grounds that it did not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer, and stated in its order that it was overruled on the ground of the statute of limitations. Defendants excepted, refused to further plead, and from a judgment on the complaint have appealed.

It will be noticed that the complaint was based upon two grounds for the cancellation of the assessment: (1) that it is void *ab initio,* and (2) that the right to enforce payment thereof has expired by limitation of law.

The limitation of law alleged in the complaint is that more than ten years have elapsed, and no attempt has been made to enforce the payment of the assessment. The trial court did not state upon what statute of limitations it based its ruling that the statute of limitations barred the action.

If, as indicated by the allegations of the complaint, it is based upon Rem. Comp. Stat., § 9394, the ten year limitation in the enforcement of local assessments, that provision is a part of, and applies only to, assessments

for local improvements, under the local improvement assessment law, and not to assessments under the eminent domain statutes.

[1] This proceeding was brought under the eminent domain statutes, and is governed as to limitations by Rem. Comp. Stat., §§ 9244 and 9261, the first providing that the judgment of the court in eminent domain proceedings awarding benefits and fixing damages, shall have the effect of a separate judgment as to each tract or parcel of land, which shall be a lien upon the property assessed from the date thereof until payment shall be made; and the second section providing that all the assessments levied under the act shall, from the date of the judgment confirming the assessment, be a lien upon the real estate upon which the same is imposed, which shall continue until such assessments are paid.

It is therefore apparent that such assessments as were here involved are intended to be perpetual liens under the statutes last cited. We have held to that effect upon a similar question in *Port Townsend v. Eisenbeis*, 28 Wash. 533, 68 Pac. 1045. See, also, *Childs v. Smith*, 51 Wash. 457, 99 Pac. 304, 130 Am. St. 1107.

Respondents also suggest that the judgment confirming the assessment roll will be barred by limitation of law in six years. That also is negatived by the provisions of § 9244, *supra*, making the lien of the judgment upon the property assessed a lien until payment shall be made.

The above conclusions, however, do not determine this case.

In a proceeding involving similar improvements as here involved, where an attempt was made to compel the commissioner of public lands to certify the lands involved to the legislature as provided by statute, we

held that under Rem. 1915 Code, § 6880, then in force, no duty rested upon the officers to certify for payment of assessments against these lands upon which preference rights of purchase had been awarded. *State ex rel. Seattle v. Savidge,* 95 Wash. 240, 163 Pac. 738.

[2] It must be remembered that the demurrer of appellants to the complaint of respondents admits the allegations of the complaint, which include the allegations that the lands had been applied for by the upland owners abutting the premises involved herein, and as such entitled to the preference right of purchase under the statutes, which application had been approved, and the preference right to purchase awarded to the then upland owner, Pacific Board & Paper Company, which transferred its rights through mesne conveyances to the state's present co-plaintiff; that such preference right had been awarded in December 1907, and the contract entered into in pursuance thereof in June, 1913. Under the statute, therefore, which was enacted in 1909 (Laws of 1909, ch. 154, p. 600, § 9), it was expressly provided:

"Where the state *has made no lease or contract, or has granted no right with reference to such land or any part thereof* [Italics ours] against which an assessment has been made for local improvements, the state shall at the next session of the legislature after such improvement is made, if it still owns the land, appropriate sufficient money to pay for such improvements or the person entitled to such money may apply to the proper state officers to have such lands sold in the manner provided by law, and if the said lands have not been appraised, the state land commissioner shall, upon said application being made, cause the same, exclusive of benefits, to be appraised, and the assessment for such improvement shall be added to the appraised valuation of all such tracts owned by the state, and such land commissioner shall cause the sale of such lands to be made in the manner provided by law, but

no sale shall be made for less than the appraised value, plus the assessment, against the tract to be sold.''

There can be no doubt that these lands are in the same condition as certain of the lands in the above cited case. It was there held that, where applications to purchase shore lands are made by upland owners under their preference right, and confirmed prior to the making of municipal assessments for local improvements, the rights of the purchasers become vested and the assessment cannot be added to the appraised value of the land as a part of the purchase price, as provided by the statute applying in cases where the state has made no lease or contract with reference to the lands against which an assessment has been made for local improvements; and it is immaterial that the formal contracts had not been issued prior to the certification of the assessments to the state officers.

It is manifest that this case is controlled by the above case. The complaint, therefore, stated a cause of action, and the trial court was right in overruling the demurrer, but wrong in the ground upon which it placed the ruling.

Since the case is here on judgment entered on a complaint, where appellants refused to plead further, the judgment is correct, and it is affirmed.

TOLMAN, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.