[No. 4151.  Decided August 8, 1902.]

THE STATE OF WASHINGTON on the Relation of Henry F. Jackson, Appellant, v. KING COUNTY et al., Respondents.

COUNTIES — MAINTENANCE OF FERRIES — LEASE TO PRIVATE PARTIES.

Under Laws 1899, p. 39, which provides that any county is authorized to operate and maintain a ferry across any body of

water within or bordering on such county," free or for toll, by and under the direction and control of the board of county commissioners of such county, and as said board shall by resolution determine," a county not only has power to operate a ferry, but is authorized to maintain one by leasing a ferry owned by it to private individuals.

SAME — CONTRACTS — REVIEW BY COURTS.

Where a county acts within the scope of its powers, the policy of a contract made by it, viewed from a business standpoint, is not subject to review by the courts, unless such a gross abuse of power as to amount practically to fraud is shown.

SAME — PUBLIC POLICY — SURRENDER OF CONTROL OF FERRY TO LESSEE.

The fact that a county in making a contract with private individuals to operate a ferry for a limited time agrees that the tolls to be charged shall not be fixed below a minimum sum, and that not more than seven trips per day should be required of them, would not invalidate the contract as being against public policy, on the ground that it amounts to a surrender by the county of its direction and control over the ferry, inasmuch as the limitation contained in Laws 1899, p. 39, against a surrender of control merely requires the county to exercise its right of control in so far as to see that the tolls are reasonable and the service adequate.

SAME — LEASE OF PROPERTY — COMPETITIVE BIDDING.

Laws 1901, p. 183, providing for the leasing of county property upon competitive bids has no application to a contract by the county for the lease of its ferry.

Appeal from Superior Court, King County.—Hon. Boyd J. Tallman, Judge. Affirmed.

*Wilmon Tucker* and *Ivan L. Hyland,* for appellant.

*Walter S. Fulton* and *Frank S. Griffith,* for respondents.

The opinion of the court was delivered by

Fullerton, J.—On November 1, 1901, the board of county commissioners of King county entered into a contract with George Bartsch and H. E. Tompkins, by the

terms of which Bartsch and Tompkins undertook and agreed to take possession of a certain ferry boat, owned by the county, and used for carrying passengers and freight, and operate the same for a period of three years, in consideration of the tolls to be earned by the boat, at rates to be prescribed by the board of county commissioners, and the further sum of three hundred and seventy-five dollars per month, to be paid out of the county treasury. The contract further provides that Bartsch and Tompkins shall keep the boat in commission and running on such schedule time as may be fixed by the board, and shall not charge any greater tolls than the board shall from time to time determine. The board agree, however, that the rate of tolls shall not be fixed below a certain minimum named in the contract, and that the schedule time of the boat shall not be fixed at more than seven trips per day. The appellant, who is a resident citizen and taxpayer of King county, instituted this action to enjoin the board of county commissioners from carrying into effect the contract, averring in his complaint that the county was without power to enter into the same, and that the contract was void, as against public policy; further averring that it was entered into by the board of county commissioners without first submitting the matter to competitive bidding. A demurrer was interposed to the complaint, and sustained by the trial court, and from the judgment entered thereon this appeal is taken.

The appellant urges here the want of power of the board of county commissioners to enter into the contract. But we think this power is conferred by the act of the legislature of March 6, 1899 (Laws 1899, p. 39). It is there provided that any county within the state is authorized to operate and maintain a ferry across any unford-

able stream, lake, estuary, or bay, within or bordering on such county, "free or for toll, by and under the direction and control of the board of county commissioners of such county, and as said board shall by resolution determine." This act empowers a county to maintain, as well as operate, a ferry. In carrying into effect the contract in question, the county is doing no more than maintaining a ferry, and it is not therefore proceeding in excess of its powers. With the policy of this contract, viewed from a business standpoint, the courts have nothing to do. Where a county is acting within the scope of its powers, its acts are not subject to review by the courts, unless they show such a gross abuse of the power conferred as to amount practically to fraud. Nothing of this kind is shown by the record before us.

It is said, however, that the act requires that a ferry maintained by a county shall be under the direction and control of the board of county commissioners of such county, and that this contract surrenders such direction and control, inasmuch as it is agreed that the board will not reduce tolls below a certain minimum, or require the boat to make more than a certain number of trips per day, and that these conditions render the contract void. But we cannot think the clause in the statute here referred to means that the board may not agree that for fixed periods it will not make changes in the rates of toll or the schedule time of the boat. To deny to it this power would be virtually to deny it the power to contract at all for the maintenance of a ferry, as every contract must mean the surrender for the time being of some absolute right. The limitation means, we think, that the board shall not leave it optional with the persons operating the ferry what rates of toll shall be charged, or what number of trips the ferry

shall make, but that it must exercise its right of control in so far as to see that the tolls are reasonable and the service adequate, and that when it does this it is acting within its power.

To sustain the contention that the contract should have been submitted to competitive bidding, the act of March 16, 1901, is cited (Laws 1901, p. 183). An examination of this act, however, convinces us that it has no application to cases of the character in question here.

The judgment is affirmed.

MOUNT, ANDERS, HADLEY, WHITE and DUNBAR, JJ., concur.