[No. 12294. Department One. March 12, 1915.]

ANDERSON STEAMBOAT COMPANY, *Appellant*, v.

THE COUNTY OF KING *et al.*, *Respondents.*[1]

FERRIES—RIGHT TO USE—GRANT. Rem. & Bal. Code, § 5013, providing that a county may "operate and maintain . . . a ferry . . . together with approaches and landings . . . appertaining thereto," for tolls, is an exclusive grant to use shore lands, belonging to the state, for the purpose of a wharf and approaches to the ferry connecting with a public highway laid out along the shore.

WHARVES — PUBLIC WHARVES—USE FOR FERRY. A county's use of a wharf and approaches for a ferry, under a grant from the state, in its proprietary capacity as licensee of the state, does not make the wharf and approaches a public dock.

FERRIES—APPROACHES—PUBLIC HIGHWAYS—PRESUMPTION. The presumption that a street converted into a ferry approach by a wharf, is a public highway, may be rebutted, and is overcome where the wharf was constructed by the public for a ferry approach incidental to a franchise right to maintain the ferry.

HIGHWAYS—EXTENT—WATER BOUNDARIES. Where a highway is laid out along a shore, following the shore line, there is no constructive extension of the street into the water, although it touches the water at intervals.

WHARVES—PUBLIC WHARVES—PRESUMPTION. Where a wharf is used in a proprietary capacity as an approach to a county ferry, and the wharf is constructed on state lands to connect with a public highway running along the shore, opposite to an intersecting state highway terminating in but not extending beyond the shore road, there is no presumption of a common right of user, and the wharf is not a public wharf.

[1]Reported in 146 Pac. 855.

SAME—PUBLIC CHARACTER—USE OF PUBLIC FUNDS. The public character of such a wharf and ferry approach cannot be determined by reference to the fact that the county has paid for it and its up-keep from the road and bridge fund; since an unlawful diversion of county funds does not affect the character of the county's owner-ship and use of the wharf and ferry approach.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 18, 1914, upon findings in favor of the defendants, in an action to enjoin interfer-ence with the operation and landing of plaintiff's boats, tried to the court. Affirmed.

*Byers & Byers* and *Vince Faben*, for appellant.

*John F. Murphy* and *Samuel Morrison* (*W. H. White*, of counsel), for respondents.

CHADWICK, J.—The appellant and its predecessors have maintained a line of steamers on Lake Washington for nearly thirty years. One of its principal routes and a material part of its business has been between the east end of Madison street, in the city of Seattle, and the town of Kirkland, on the east shore of Lake Washington. The streets in the town of Kirkland run east and west and north and south. There is a street along the shore of the lake adjacent to the line of ordinary high water and the shore lands belonging to the state of Washington. It is intersected on its east line by the streets of the town. Its west line is unbroken.

In 1895, the legislature passed an act authorizing any county to construct and maintain "a ferry across any un-fordable stream adjoining and within one mile of the limits of such city or town, together with all necessary grounds, roads, approaches and landings necessary or appertaining thereto . . . with full jurisdiction and authority to manage, regulate and control the same . . . and to operate the same free or for toll." Laws 1895, p. 341. Within a short time thereafter, the county of King, acting under the statutory grant, began the erection of a ferry, and

built an approach and wharf or landing leading at a slight angle to an intersecting street or road running east and west through the town of Kirkland, now known as the Redmond road, or state aid road No. 287. In 1899, the legislature passed an act enlarging the grant of 1895 so that the county might maintain a ferry across any "lake, estuary or bay within or bordering on said county, together with all the necessary boats, grounds, roads, approaches and landings necessary or appertaining thereto." Laws 1899, p. 39 (Rem. & Bal. Code, § 5013).

The county has maintained a ferry since 1898, over the same route. The record does not disclose the contrary fact, and we therefore assume that the streets of the town of Kirkland have never been extended and platted over the abutting shore lands. The approach at the Kirkland landing is a wharf about twenty-four feet wide up to a point where the county has erected gates to control the movements of passengers to and from the ferry, then terminating in a U-shaped curb or slip for the ferry boat. The wharf is inclosed by a railing. A "bull rail" divides the wharf into two sections so as to protect foot passengers from the hazards of wheel traffic.

About fifteen months before the beginning of this suit, appellant, with the knowledge and unofficial consent of two of the county commissioners, began to land its boats at the wharf and to compete for the traffic accumulating at that point. It cut the railing and the bull rail and built a slip so that passengers and wheel traffic could be taken aboard its boats. Prior to the time it began to use the wharf or approach, it landed its boats further south at a point known as the Market street dock. There is testimony tending to show that the receipts of the county ferry were diminished by reason of the fact that appellant's boats were landing at the ferry dock, and that the already deficient income of the ferry was lessened thereby. A short time prior to the commencement of this action, the county commissioners served a

notice upon appellant that it could no longer use the wharf for the accommodation and landing of its boats. This warning being unheeded, the county sent its agents onto the dock and replaced the railing and the "bull rail" which had been removed; whereupon appellant brought suit, praying that respondent be restrained from further interfering with the operation and landing of its boats. After a trial on the merits, the court found with the county on its cross-complaint, and enjoined appellant from further use of the wharf.

It is the contention of appellant that the dock is a public wharf open to all users; that a dock may be public or private, depending upon the character of its use; that the present dock is at the termination of a public highway and has been used by the public ever since it was erected, without let or hindrance; and as a further reason for determining its character as a public dock, it is urged that it has been paid for out of the road and bridge fund of the county, which latter circumstance, when coupled with the power of the county to build and maintain docks, Laws 1903, p. 20 (Rem. & Bal. Code, § 8114), makes the holding that the wharf is a public dock imperative and demands a reversal of the case. The rule relied on is thus stated:

"The question whether a wharf is public or private depends upon the purpose for which it was built, the uses to which it has been applied, the place where located, and the nature and character of the structure. When a public highway is laid out to navigable waters, its termination is presumed to be a public landing as incident to the highway." Gould, Waters (3d ed.), § 119.

See, also, *Compton v. Hankins*, 90 Ala. 411, 24 Am. St. 822, 9 L. R. A. 387; *City of Buffalo v. Delaware, L. & W. R. Co.*, 190 N. Y. 84, 82 N. E. 513, 16 L. R. A. (N. S.) 506.

It is the contention of the county, in so far as it is necessary to notice its contentions, that the wharf was built for its own uses as a part of the ferry; that it is no more than an approach; that it is operating its ferry in a proprietary

capacity as a licensee of the state; that it is collecting tolls
and is entitled to the unhindered use and enjoyment of its
franchise and the exclusive use of all of its incidents.    It
will be seen, therefore, that a right decision depends upon an
answer to the question whether the approach or wharf is a
part of a highway.   It seems to us that the statute is con-
clusive.   Under it the county is authorized "to  .  .  .
construct  .  .  .  operate and maintain a ferry  .  .  .
together with  .  .  .  approaches and landings  .  .  .
appertaining thereto."

As stated, appellant contends that the wharf is a contin-
uation of the street known as the Redmond road, or state aid
road No. 287, and that the county cannot claim an exclusive
interest in the dock or in any part of it, other than that part
which is inclosed by the fence at the end of the dock.   This
conclusion does not follow.   The shore lands of the state
belong to the state of Washington and can be disposed of
by the state in any way it sees fit to dispose of them.   It
may grant an exclusive use; indeed, all of the laws pertain-
ing to the lease and sale of shore lands give or imply the
right of exclusive use and enjoyment.

A dock or wharf is not ordinarily held to be a part of a
public highway (*State ex rel. Wauconda Inv. Co. v. Superior
Court*, 68 Wash. 660, 124 Pac. 127, Ann. Cas. 1913 E.
1076), and although it be that a street converted into a ferry
approach by means of a wharf is presumed to be a highway,
the presumption, like all presumptions of fact, is only a rule
of evidence shifting the burden of proof; and when it is made
to appear that the wharf has been constructed and main-
tained by the public as a ferry approach, it follows that it
is incidental to the franchise right.   In legal contemplation,
the ferry ends upon the ground, and not at the outer edge of
a wharf which is made necessary on account of the waters
being too shallow for navigation or for other reasons.

A ferry, whether operated under a license or a statute, is,
in a sense, a monopoly, and although the power is in the state

to permit the operation of a ferry over the same route, that right will not be implied.   It depends upon express grant.

"In this country ferries are established by legislative authority, which is exercised either directly, or by a delegation of powers to courts, commissioners, or municipalities." *Appeal of Douglass*, 118 Pa. 65, 12 Atl. 834.

See, also, *Mills v. St. Clair County*, 8 How. 569.

We only advert to the property and franchise rights of the county to emphasize the fact that the character of the approach must be determined by the whole spirit of the law, and that it cannot be considered a part of a highway without destroying the purpose of the law as well as the intended uses of the grant.   We have no purpose to pass upon the challenged right of appellant to engage in traffic between Madison street and Kirkland, being itself without a license. That question is not necessarily involved.   To discuss it would require an examination of the laws and rules of navigation.   It may be reserved for future consideration.

Furthermore, it has been held that where, as in this case, a highway is laid out along a shore, following the line of the shore although it may come in contact with the water at intervals, there is no constructive extension of a street into the water.   This exception to the rule that a highway laid out to a navigable stream presumptively terminates at a public landing and may be so used by the whole public, is noticed by Mr. Gould, Waters (3d ed.), § 119.

"Where a highway is laid out to navigable water and there terminates, the terminus may be regarded as presumably intended for a public landing as incident to the highway.

"Where, however, a highway, running from place to place, is laid out along the shore of a navigable stream and in immediate contact with it for a considerable distance, the reason for the presumption does not exist."   Syllabus, *Burrows v. Gallup*, 32 Conn. 493, 87 Am. Dec. 186.

So in this case, the right to use the shore or shore lands at all depends upon some statute or contract, and no presumption of a right of common user arises from the fact that a

wharf or dock, put to private uses or used by the public in the prosecution of a proprietary function, is erected opposite to a street terminating in, but not extending beyond, the shore road.

Again, whether the wharf is a public highway depends upon the title to the soil as well as upon its use. The title to the shore lands, in so far as this record shows, is in the state, and can only be platted under its authority. Const., art. 17, § 1; Rem. & Bal. Code, § 6746 (P. C. 477 § 131). It follows that neither manner of use nor time of use would make the approach to the ferry a public highway or defeat the right of the proper authorities to extend the streets of the town over the shore lands, even in disregard of all present improvements. If the public has no right to assert that the wharf is a highway—and assuredly it cannot, for there is no title to sustain it—it is certain that appellant can claim no such right. It has asked, and of course can receive, no more than every other person or legal entity can rightfully claim and sustain in law.

Appellant earnestly contends that the character of the dock or approach must be determined by reference to the manner in which it has been paid for and maintained. We may admit, for the sake of argument, that the dock has been paid for and that its upkeep has been made a charge upon the road and bridge fund, but that is a question that does not concern appellant. If the commissioners of the county are unlawfully diverting the general funds of the county, there is a way to restrain them. The character of the county's ownership and use of the dock would not be affected thereby. The fact that property is paid for out of a misappropriated or diverted fund does not fix title in the fund. Title depends upon the statute. In this case, the county has no more than a permission to use state shore lands in which the public has no interest except as they become patrons of the ferry.

Appellant further contends that boats have landed at the dock since it was built and that it has been used, not only by appellant company, but by others for general commercial purposes.   This may be true, but the use was permissive.   The users were no more than licensees.   There was nothing given up or surrendered by them.   The license operated to their benefit and advantage.   And from the nature of things there can be no estoppel.   *Weems Steamboat Co. v. People's Steamboat Co.*, 214 U. S. 345.

The decree of the lower court is affirmed.

MORRIS, C. J., MOUNT, HOLCOMB, and PARKER, JJ., concur.