[No. 14884. Department One. December 28, 1918.]

E. C. HART et al., Appellants, v. KING COUNTY, Respondent, PUGET SOUND TRACTION, LIGHT & POWER COMPANY, Defendant.[1]

CARRIERS (82)—ACTIONS FOR INJURIES—PLEADING. In a complaint for personal injuries through stepping into a hole in a county ferry approach, an allegation that the accident occurred "while alighting from a street car," was used in a general sense and as qualified by other references, when construed together with the allegation that it was "while attempting to walk" upon the approach to the ferry, and "in the direct pathway thereof," and allegations fixing the exact location of the hole in the walk.

SAME (81)—COMPANIES LIABLE — JOINT LIABILITY — COMMON APPROACH. In an action for personal injuries "while alighting from a street car," stepping into a hole in a plank roadway maintained at the terminus of the street car tracks by two carriers jointly, both would be liable, where the accident was not due to any movement of the street car.

COUNTIES (56)—TORTS—LIABILITY—OPERATION OF FERRY. A county operating a ferry for hire under the authority of Rem. Code, § 5013, acts in its proprietary capacity, and is liable in damages for its acts and omissions as an individual engaged in a like enterprise.

CARRIERS (81)—COMPANIES LIABLE — JOINT LIABILITY — COMMON APPROACH. Where two common carriers, each acting independently in the collection of fares, maintain an approach or connecting way for the convenience of passengers in transferring, the duty of maintenance is upon both, and liability to passengers cannot be evaded by either by contract between themselves, or by a denial of ownership in the fee to the approach.

CARRIERS (82) — ACTION FOR INJURIES — PLEADING. In an action against a carrier by an intending passenger injured upon an approach, an allegation overstating the degree of care required does not render the complaint subject to general demurrer.

SAME (70, 75)—CARE REQUIRED—INTENDING PASSENGERS. A carrier is only bound to exercise ordinary care as to an intending passenger using an approach to a ferry.

SAME (88)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY. Where an intending passenger, in the nighttime, stepped into a hole in a county ferry approach that was not lighted so that the hole could

[1]Reported in 177 Pac. 344.

be seen, whether the county exercised reasonable care for the safety of passengers is a question for the jury.

COUNTIES (37) — CONTRACTS AND LIABILITY — MAINTENANCE OF FERRY—ULTRA VIRES. A county, being authorized by Rem. Code, § 5013, to conduct a ferry and collect tolls, the maintenance of approaches and landing places is not *ultra vires*, but is necessarily implied as part of the general power granted.

SAME (100)—ACTIONS—PLEADING—NOTICE OF CLAIM. In a complaint against a county repeatedly referring to an accident on a county ferry approach in November, 1916, a charge that the county had notice of the defect long before November 30, 1917, is clearly a clerical error, and sufficiently pleads notice, as against a general demurrer.

PLEADING (6)—CONCLUSIONS—"NEGLIGENT." A complaint against a carrier by a passenger for personal injuries, is sufficient where it sets out the facts and breach of legal duty, although it fails to use the term negligent, or allege that a defect was dangerous.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 25, 1918, upon sustaining a demurrer to the complaint, dismissing an action for personal injuries sustained by a passenger through a defective approach to a ferry landing. Reversed.

*Farrell, Kane & Stratton* and *Wm. M. Watson*, for appellants.

*Alfred H. Lundin, S. M. Brackett*, and *Wm. J. Steinert*, for respondent.

CHADWICK, J.—Appellants brought this action to recover for an injury suffered by the plaintiff wife while traveling from the downtown district in Seattle to Kirkland, on the east shore of Lake Washington. The route of travel was over the Madison street car line of the Puget Sound Traction, Light & Power Company, and the ferry maintained by respondent King county between the western shore of Lake Washington at the end of Madison street and the

eastern shore of the lake. The plaintiff husband being joined to satisfy the statute, we shall refer to the plaintiff wife as the plaintiff.

The appeal is from a judgment of dismissal as to King county, after the court had sustained a general demurrer to the second amended complaint. The traction company is not a party to this appeal. The demurrer admits that the county of King is maintaining, under the authority of existing statutes, a ferry for hire, with approaches for the use of intending passengers; that the traction company's street car line ends at about the east side of Laurelshade avenue, a street or boulevard skirting the western shores of Lake Washington; that the traction company and the respondent maintain a plank roadway or approach from the terminus of the street railway to the landing slip of the ferry.

It is fairly stated in the complaint that the approach or roadway was a link in the method provided by the two defendants for the continuous movement of passengers from the city to the ferry. It is also alleged that, although the approach was built upon property owned by the traction company, the respondent and the traction company had entered into a contract whereby King county had assumed the duty of keeping the plank road or approach in repair.

We take it from the briefs that the court was of the opinion that the county would not be liable because the title to the property over which the roadway had been laid was in the traction company; and, furthermore, that the complaint did not sufficiently charge that the injury complained of occurred at a time when any duty, under any theory of the law, would attach to respondent.

The allegations of the complaint going to the injury are as follows:

". . . and [the approach] was then and had long been used in common by the said two defendants aforesaid for the travel of the invited and intending passengers of each of said defendants going and coming and returning to and from the said street cars and the wharf and ferry boats of said two defendants respectively; and the plaintiff Hazel Hart, while such passenger of said defendant Puget Sound Traction, Light & Power Company, and while alighting from said street car, and while in the attempting to walk upon the said regularly used plankway or approach to said ferry, and while in the direct pathway thereof, leading straight to said ticket office of said ferry from said street car terminus, in walking towards said wharf with the intent and for the purpose of taking passage on the ferry boat of King county, which was scheduled to leave at ten o'clock p. m. for Kirkland, stepped into a hole in said plankway, which hole was about thirteen inches long and four and one-half inches wide and was about thirteen inches southward from the easterly end of the southerly rail of the said street car track, and about six or seven feet easterly from the east side of Laurelshade avenue produced across the eastern end of Madison street, and instantly fell upon said plankway while her foot was thus in said hole to the extent of thirteen inches in depth, which said stepping and falling caused said plaintiff the severe and serious injuries hereinafter detailed. That said fall occurred at about nine fifty-five o'clock on the night of said 30th day of November, 1916, and while there was not sufficient light of any kind whereby said plaintiff might or could see said hole in said plankway, and said plaintiff had never seen said hole nor had she been told of it nor warned about it by any one, and never knew or heard of its existence before said fall."

Counsel for respondent rests his main argument upon that part of the complaint which says "and while

alighting from said street car.'' The law requires us
to construe complaints liberally as against a general
demurrer, and when so considered we think, in the
absence of a motion to make the complaint more defi-
nite and certain, there is a fair charge of liability.
The words ''and while in the attempting to walk upon
the said regularly used plankway or approach to said
ferry, and while in the direct pathway thereof, lead-
ing straight to said ticket office of said ferry and from
said street car terminus, in walking towards said
wharf with the intent and for the purpose of taking
passage on the ferry boat of King county . . .
stepped into a hole in said plankway, which hole was
. . . about six or seven feet easterly from the east
side of Laurelshade avenue produced across the east-
ern end of Madison street,'' and that part of para-
graph 6 of the complaint wherein it is alleged that the
plank approaches to the ferry extend from Laurel-
shade avenue east to the King county wharf and ferry,
must be given their legal weight and inferences. When
the whole complaint is construed together, it would
seem that the words ''alighting from said street car''
were used in a general sense and, as qualified by other
references, are sufficient to charge that it was while
going from the street car to the ferry that plaintiff
fell and injured herself.

But if this construction be not sound—if, as it is
alleged, the roadway or approach between the ter-
minus of the one common carrier and the other was
maintained jointly and as an aid to traffic and intend-
ing passengers, the county's liability would begin
when the plaintiff stepped onto the plank roadway,
although she may have been in the act of alighting
from the street car; for it will be borne in mind that
there is no charge that she was injured by any move-

ment of the street car. The thing relied upon is the defect in the approach, and that alone.

By availing itself of the privileges offered under Rem. Code, § 5013, the county made of itself a common carrier for hire. It is operating in its proprietary capacity (*Anderson Steamboat Co. v. King County,* 84 Wash. 375, 146 Pac. 855), and as such proprietor is liable to answer in damages for its acts or omissions, as would an individual or a *quasi* public corporation engaged in a like enterprise for hire. *Bergen v. Lewis County,* 95 Wash. 499, 164 Pac. 73.

Many cases are cited by counsel on either side going to the law of "intending passengers." None of them covers a case like this where two common carriers, each acting independently in the collection of fares, maintain an approach, or connecting way, in common for mutual benefit and for the convenience of passengers who are compelled to transfer from one carrier to the other. The duty of maintenance, by whatever method that duty is divided between themselves, being upon both carriers, it would seem that an injury sustained while transferring would make both carriers answerable for neglect of the mutual duty. For in such cases the duty of protection to passengers is, as between the carriers, neither individual nor delegable, nor can it be evaded by contract *inter sese,* or by a denial of an ownership of the fee.

Respondent complains that the pleading holds it to a greater degree of care than the law will warrant; that it is not held, as the complainant says, to a high degree of care, but to an ordinary and reasonable degree of care, citing *Belles v. Tacoma,* 79 Wash. 200, 140 Pac. 324, and *Wilton v. Spokane,* 73 Wash. 619, 132 Pac. 404, L. R. A. 1917D 234. But this would not make the complaint vulnerable to an attack by a

general demurrer. The charge of "a high degree of care," if material at all, and we do question its materiality, is an overstatement of the law, rather than an understatement of fact, and is subject to correction by the court at the trial.

It seems to have been settled that there is a difference in the degree of care imposed upon a common carrier as between the case of one who is actually a passenger and one who is intending to take passage and is approaching in the manner and by the means provided by the carrier. In the latter event, the carrier is held to the rule of ordinary or reasonable care.

"They are only bound to exercise ordinary care in view of the dangers to be apprehended. The distinction between such liability for an injury to a passenger occurring on their cars or boats, and for an injury occurring on their platforms or approaches to the station or landing places, is well recognized." *Skottowe v. Oregon Short Line & U. N. R. Co.,* 22 Ore. 430, 30 Pac. 222, 16 L. R. A. 593; and in principle, *Gregg v. King County,* 80 Wash. 196, 141 Pac. 340, Ann. Cas. 1916C 135.

Whether respondent exercised reasonable care for the safety of passengers approaching the ferry is a question of fact for the jury. *Harris v. Bremerton,* 85 Wash. 64, 147 Pac. 638, Ann. Cas. 1916C 160.

Counsel contends that, in any event, respondent county is not liable because the maintenance of an approach to a ferry is *ultra vires,* in that the county is only empowered to build wharves and landings at the termination of a county road (Rem. Code, § 8114); that Madison street, being within the corporate limits of a city, is not a county road, and therefore the maintenance of the approach is beyond the power of the county and there is no liability.

In an action against a municipal corporation for a

tort, the first inquiry, as against a plea of *ultra vires,* is whether the act complained of necessarily lies wholly outside of the general or special powers of the municipality, for a municipal corporation has all powers necessarily incident to the execution of its granted powers. So in this case, the county being empowered to conduct a ferry and collect tolls (Rem. Code, § 5013), authority to provide approaches is necessarily implied as a part of its general power, for without approaches and landing places it could not exercise the major function.

It is insisted, also, that the complaint does not sufficiently charge that appellant had notice of the defect. It is said in the brief,

"The accident occurred in November, 1916. The allegation is that the respondent knew, or should have known, the existence of said hole on and long before November 30, 1917, which was a year after the accident. This certainly is not sufficient."

We cannot believe that counsel seriously believe that we should sustain the judgment because notice was insufficiently plead. "The 30th day of November, 1916," is written in the complaint nine times, and twice in the same paragraph in which the charge of notice is fixed as of a time "long before November 30, 1917." It would have been proper, if the patent clerical error was of sufficient importance to invite consideration, to have moved to make the complaint more definite and certain.

It is also urged that negligence is not sufficiently plead, in that the term "negligent" nowhere appears in the entire pleading, and furthermore, that "it is not alleged that the hole was dangerous." It might have been proper, as it is usual to adorn complaints in cases of this kind with word and phrase, to have

so alleged. But the use of the word "negligent," or a statement that the hole in which respondent stepped was dangerous, would have added nothing to the legal sufficiency of the complaint. It was enough to allege the breach of a legal duty. The conclusion of the pleader, with which the jury may entirely disagree, adds nothing to a complaint, which, under our statute, ought to be, and sometimes is, "a plain and concise statement of facts constituting the cause of action."

Reversed, and remanded with instructions to overrule the demurrer.

MAIN, C. J., MACKINTOSH, MITCHELL, and TOLMAN, JJ., concur.