[No. 22732.  *En Banc.*  August 6, 1931.]

ANNA NORTON, *Respondent,* v. J. L. ANDERSON *et al.,*
*Appellants.*[1]

[1]Reported in 2 P. (2d) 266.

*Byers & Byers* and *Alfred J. Westberg,* for appellant J. L. Anderson.

*Robert M. Burgunder* and *Colvin & Rhodes,* for appellant King County.

*Padden & Moriarty,* for respondent.

FULLERTON, J.—In this action Anna Norton, as plaintiff, recovered a joint and several judgment in the sum of seven thousand dollars against King county and J. L. Anderson, as defendants, for personal injuries suffered from a fall on an approach to a ferry

operated by the defendant Anderson. From this judgment, the defendants separately appeal.

The facts giving rise to the action are not in serious dispute. Under authority conferred by statute (See Laws of 1895, ch. 130, p. 341; Laws of 1899, ch. 29, p. 39; Laws of 1919, ch. 115, p. 282; Rem. Comp. Stat., § 5477), King county for a number of years owned and operated a public ferry across Lake Washington, over a route extending from the city of Seattle, on the west side of the lake, to the city of Kirkland, on the east side. The western terminus of the route—the terminus with which we are here concerned—is near the eastern terminus of east Madison street, one of the principal thoroughfares of the city of Seattle. East Madison street terminates in Forty-third avenue, a public street extending north and south, paralleling approximately the west margin of Lake Washington. In 1918, the county acquired a strip of land extending from the terminus of east Madison street to the ferry landing, the effect of which was to provide a continuous way from the street to the ferry landing. The conveyance to the county was made upon a condition subsequent, expressed in the deed in these words:

"This conveyance is made upon the condition that the land herein conveyed will be used exclusively as a public approach to the ferry slip at Madison Park . . . "

Thereafter, in the same year, the county built a dock, a ferry slip, a waiting-room, and other structures suitable for a ferry terminus, including the approach involved in this action. This approach crosses the land above mentioned and a part of a tract of shore land designated as "Waterway No. 4" on the state's plat of Lake Washington shore lands. The approach was designed for the exclusive use of persons walking to and from the ferry-boats and east Madison street, and

that has always been the use made of it. The approach was elevated above the surface of the water and also above the surface of the ground for some distance back from the shore line. It was floored with planks two inches thick, twelve inches wide, and twelve feet long, laid transversely to the line of travel.

About January 1, 1928, the county leased to the appellant Anderson certain of its ferry-boats, including those operated on the Kirkland route. The lease required the lessee to operate the ferries so as to give the public a specified minimum of service at not more than certain rates, and in his operations to make use of the county's docks, including the one above mentioned. Among the provisions of the lease was the following:

"The lessee shall at his own cost and expense maintain the ferry slips and aprons of said docks, also the ticket offices, waiting rooms and warehouses and other structures thereon used by lessee in connection with his operations, and the county at its cost and expense shall maintain the remaining portions of said docks."

While this lease was in effect and the lessee was operating under it, the respondent met with the accident that caused the injuries for which she recovered in this action. On May 30, 1929, when one of the ferries operated by the lessee was about to leave the Madison street dock for Kirkland, the respondent, accompanied by a Mrs. Burnett, started to go along the approach to the dock to take the ferry, when she tripped and fell prone upon the walk with such violence as to cause her very severe injuries. There was evidence tending to prove, and the jury must have believed, that the respondent, while walking rather hurriedly along the approach, stepped into a cavity in one of the planks of the walk and caught the toe of her shoe upon a large spike that protruded from the bottom of it.

▪ ■ We notice first the errors assigned by the county. The court admitted in evidence, over the county's objection, the defective plank, photographs of it in place in the walk, and sketches and blue prints to illustrate the testimony of witnesses who described the dock and its various parts. The county objected to the introduction of these exhibits on the ground that they were not sufficiently identified, and now claims that their admission in evidence was error. The testimony was ample, however, if accepted as true, to identify all of these exhibits, and to show that they represented, with fair accuracy, the place of the accident and the physical conditions surrounding it. There can be no doubt that exhibits of the nature of these are admissible under the circumstances here shown. *Spokane v. Patterson,* 46 Wash. 93, 89 Pac. 402, 123 Am. St. Rep. 921, 8 L. R. A. (N. S.) 1104; *Deitchler v. Ball,* 99 Wash. 483, 170 Pac. 123; *Knapp v. Siegley,* 120 Wash. 478, 208 Pac. 13; *Ingersoll v. Olwell,* 127 Wash. 276, 220 Pac. 775.

■ The county next complains that the court erred in giving the following instruction to the jury:

"And you are instructed that, by the terms of the contract or lease existing between the defendant King county and J. L. Anderson, it was the duty of the county to maintain and repair that part of the structure upon which the plaintiff was injured and to repair defects, if any, in the same."

This instruction was based, not only upon what seems to us to be the right interpretation of the provision of the lease above quoted, but also upon the interpretation put upon it unequivocally by the parties to the lease by their own conduct. Under this provision and one identical with it in a preceding lease between the same parties, the county had always assumed the duty of maintaining and repairing, and had in fact

maintained and repaired, the approach upon which the respondent was hurt. Moreover, about two months after the respondent's accident, the county, in making betterments about the dock, rebuilt or remodeled this approach as a part of what its officers conceived to be the county's duty under the contract. It needs no argument to show that, in these circumstances, the court was right in adopting the interpretation of the contract so long put upon it without question by the parties themselves.

The county argues that there was insufficient evidence of negligence on its part to take the case to the jury. We have examined the evidence closely, and are unable to sustain this contention. The cavity or depression into which the respondent stepped, with a large spike protruding from the bottom of it far enough to come above the surface of the walk, was a thing likely to cause pedestrians to trip and fall, and hence its presence made the walk, to that extent, unsafe. The cavity was the result of decay of the wood and the use of the walk in its decayed condition, and so must have been there for a considerable period of time. Besides, there was competent testimony to the effect that the cavity had existed, open and easily observable, for many months. Therefore, the county had had ample opportunity to discover the defect, and, in the exercise of ordinary care, ought to have discovered and repaired it. In none of the cases cited by the county, was the defect as serious or as plainly apparent as in the present case.

The county contends that it was under no legal duty, and had no power under the law, to maintain or keep in repair any part of a ferry landing for a private operator of a ferry such as the lessee. This contention involves a misconception of the county's status with respect to the operation of the ferry in question.

Under the authority granted by the statute cited in the beginning of this opinion, the county undertook to provide the public with ferry service. It acquired ferry-boats and built landings and docks, and for a long time operated and maintained the boats and terminals itself as a common carrier. Then it made the lease that has been mentioned, whereby, in legal effect under the statute, it maintains the ferry service by having the lessee operate the boats and use the terminals. *State ex rel. Jackson v. King County,* 29 Wash. 359, 69 Pac. 1106.

The county's position is not at all what it would have been had it disposed of the ferries absolutely, retaining no measure of control over their future operation. Under the lease, it still exercised power conferred by the statute, and in doing so it might lawfully assume such duties as it saw fit so long as the duties were necessary to be performed in the exercise of the power. The ferry-landing approach upon which the respondent was injured is, we must assume, a reasonably necessary adjunct to the ferry system. It belongs to the county as a part of that system, and is not a part of an ordinary highway or street. *Anderson Steamboat Co. v. King County,* 84 Wash. 375, 146 Pac. 855. See, also, *Hart v. King County,* 104 Wash. 485, 177 Pac. 344.

The county bases an assignment of error upon a recital by the court, while instructing the jury, of various injuries complained of by the respondent, of some of which there was no evidence. The record shows with certainty, however, that the recital was made in stating to the jury what was alleged in the complaint, and that, immediately thereafter, the court stated, in effect, that the county by its answer denied all such allegations of injuries. Afterwards, the jury was clearly instructed that a recovery could be had

only for such injuries as were proved by a preponderance of the evidence. It follows that there was no error here.

■ The county complains because the court refused certain requested instructions touching the duty of the jury in weighing testimony of interested witnesses, and in excluding from consideration all prejudice or sympathy for the respondent, and all statements of counsel and allegations in pleadings not supported by the evidence. To have given these requested instructions, would have been simply to repeat in another form, though perhaps with more emphasis, what we find the court told the jury quite plainly and fully in the instructions given. There was no error in refusing the requests.

■ The lessee, the appellant Anderson, contends that the ferry approach was a highway or a street, and that the maintenance of it was a governmental function of the county or of the city of Seattle; and that therefore he was under no duty to see that the approach was kept safe, and would not have had the right to repair it if he had desired to do so. We have already seen, however, in discussing one of the county's contentions, that the approach was not a highway or a street, but was built and maintained by the county in its proprietary capacity, for the sole purpose of being used by pedestrians going to and from ferry-boats.

When the lessee undertook the operation of the ferries, he became a common carrier, as the county had been before him. In his operation of the ferries, he continued to invite passengers and intending passengers to use the approach, just as the county had done. In the lease, he took a promise from the county that the latter would keep the approach in repair, but he

did not and could not thereby relieve himself of any duty to his invitees. As to them, he could not delegate to another the duty to keep in reasonably safe condition the place which he invited them to use. *Owen v. Washington & C. R. R. Co.,* 29 Wash. 207, 69 Pac. 757; *Hart v. King County,* 104 Wash. 485, 177 Pac. 344.

The lessee's contention that the pleadings, as between himself and the respondent, fixed the status of the approach as being a public highway or street for the maintenance of which he is not liable, is not tenable. The complaint very clearly stated the facts as they existed, and the plain intendment of the allegations, considered together, is that the respondent, as well as the county, owed to the public the duty of keeping the approach in repair; that the county owed the duty because the approach was a part of its ferry system, and that the lessee owed the duty because the approach was an adjunct of the ferry which he invited the public to use.

The lessee argues that the court's instructions to the jury so repeatedly mentioned the fact that the lessee was a common carrier that the jury must have been led to infer that the lessee owed the respondent a different kind or greater degree of care than ordinary care. We do not find, however, that the term "common carrier" was used with undue frequency in the instructions, nor even that it was employed oftener than reasonably necessary to make clear the relations of the parties and their several duties. There was nowhere any mention of any but ordinary care.

The other assignments require no special consideration.

The judgment of the superior court is affirmed.

TOLMAN, C. J., MAIN, PARKER, MITCHELL, HOLCOMB, MILLARD, and BEELER, JJ., concur.

BEALS, J. (dissenting in part)—I concur in the affirmance of the judgment as against appellant King county; as to the affirmance of the judgment against appellant Anderson, I dissent.