[No. 27510. Department One. August 1, 1939.]

THE STATE OF WASHINGTON, *on the Relation of King County, Appellant,* v. LACEY V. MURROW, *as State Director of Highways, Respondent.*[1]

[1]Reported in 93 P. (2d) 304.

B. *Gray Warner* and *Lloyd W. Shorett*, for appellant.

*The Attorney General* and *L. C. Brodbeck, Assistant*, for respondent.

JEFFERS, J.—This is an appeal by plaintiff and relator, King county, from a judgment of dismissal in favor of defendant and respondent, Lacey V. Murrow, as director of highways of the state of Washington, in a mandamus action, wherein plaintiff sought to obtain a writ to compel defendant to approve and allow a voucher for $6,335.45, as a proper claim against the motor vehicle fund allocated to plaintiff, for the purpose of reimbursing plaintiff's county road fund for premiums paid from the last named fund for marine insurance, containing fire coverage, insuring the ferry boats Mercer, Washington, Leschi, Lincoln, and West Seattle, owned by plaintiff and used in daily service in transporting motor vehicles between the termini of county roads in King county.

Defendant filed a return to the petition and affidavit for the writ, admitting that plaintiff owned the ferry boats mentioned in its petition, and that such boats were used daily in transporting passengers and motor vehicles; admitting that he received the voucher representing the amount paid from the county road fund for such insurance; and admitting that he refused to approve such voucher or authorize the same to be paid from the motor vehicle fund. Defendant alleged affirmatively that, since January, 1928, such ferries have not been operated or maintained by plaintiff, but have been operated and maintained by J. L. Anderson, or Anderson Steamship Company. Defendant further alleged that insurance is not a proper item to be paid

from the motor vehicle fund. Plaintiff, by its reply, admitted that such ferries have been, and are now being, operated by J. L. Anderson, under a lease which provides for the transportation of persons and motor vehicles across Lake Washington.

This matter was heard by the court on the merits, and thereafter, on December 2, 1938, the court entered its judgment of dismissal, and this appeal followed. Plaintiff and relator will hereinafter be referred to as appellant, and defendant and respondent as respondent.

The facts are not in dispute, and may be summarized as follows: Appellant was, at all times herein mentioned, the owner of the boats named in its petition, which boats were being operated as ferries on Lake Washington by one J. L. Anderson, under and by virtue of a lease entered into between appellant and Anderson, January 1, 1928, such lease to run for a period of twenty years. The lease provided, among other things, that the county should keep the vessels leased fully covered by marine insurance, loss payable to the county, and that the premiums, except that portion thereof which should be for protection against collision, should be paid by the appellant. The lease further provided that the county reserved the right to place standard form fire insurance on the ferries, in lieu of the fire coverage contained in the marine policies. The lease also provided that the ferries should be operated on certain fixed schedules between certain points in King county, and that appellant should, at its own expense, keep up certain parts of the dock.

Appellant's county commissioners, having been advised by the prosecuting attorney that the item of marine insurance on these ferries was a proper item to be paid from the motor vehicle fund, in preparing their budget for 1938, did not include therein any item

for such insurance, to be paid from the current expense fund, and there is no money in such fund with which to pay these premiums. On December 29, 1937, appellant took out marine insurance, with fire coverage, for the year 1938, on the ferry boats Mercer, Washington, Leschi, West Seattle, and Lincoln, then being operated under lease by J. L. Anderson, and, for the purpose of paying the premium on such policy, drew a warrant on the county road fund in favor of Vern Cole Agency, which warrant was thereafter presented and paid from the county road fund. Thereafter, the county auditor, pursuant to the provisions of Rem. Rev. Stat., Vol. 7A, § 6450-54 [P. C. § 2697-457] (Laws of 1937, chapter 187, p. 763, § 54), prepared a voucher showing the amount so paid from the county road fund and presented such voucher to respondent, with the request that he approve the same so that the amount of the voucher might be paid from the motor vehicle fund allocated to appellant. Respondent refused to approve the voucher or to authorize payment of the insurance premium from the motor vehicle fund, for the reason that insurance is not reimbursable. At the time such voucher was presented, there were sufficient funds in the state motor vehicle fund allocated to appellant to pay the item of insurance.

It appears from the testimony of Stewart Krieger, senior accountant in the department of public service, that, under the rules promulgated by such department, the state had adopted a uniform classification of accounts for private water transportation companies; and that, under such rules, the account of insurance is required to be carried under the item of operating expense accounts, and that such item is taken into consideration in fixing rates to be charged by ferries. H. E. Tompkins, manager of the Lake Washington ferries, who had been in the steamboat business for forty

years, testified that marine insurance on vessels and on ferries operating on Lake Washington was regarded among shipping men as a proper item of operating expense, and that no company would attempt to operate without marine and fire insurance. Respondent offered no testimony herein.

Appellant assigns error upon the entry of judgment for respondent.

The question presented is whether or not appellant is entitled to have its county road fund reimbursed from the state motor vehicle fund allocated to it for expenditures made for marine insurance, upon ferries owned by it but operated by another under lease.

Appellant contends that Laws of 1937, chapter 187, p. 762, § 53 (Rem. Rev. Stat., Vol. 7A, § 6450-53 [P. C. § 2697-456]), which authorizes the county to use any moneys accruing to the credit of the county in the motor vehicle fund for the construction, alteration, repair, improvement, or maintenance of the county roads, etc., and for ferries, is sufficiently broad in its scope to authorize payment from the motor vehicle fund for marine insurance on the ferries involved herein, as a part of the maintenance of such ferries; while respondent contends that the words "for the construction, alteration, repair, improvement, or maintenance" do not apply to ferries, and that such section does not apply to the operating cost of ferries, especially where the ferry is operated and maintained by another. Section 53, *supra,* provides in part as follows:

"Any monies accruing to the credit of any county in the motor vehicle fund may be paid to such county, as provided by law, for the construction, alteration, repair, improvement or maintenance of the county roads of such county and bridges thereon and for wharves necessary for ferriage of motor vehicle traffic and therefore essential to the county road system, and for ferries, and for the acquiring, operating and main-

taining of machinery, equipment, quarries, or pits for the extraction of materials and for the cost of establishing county roads, acquiring rights of way therefor in the manner provided by law and expenses for the operation of the county engineering office and for any other proper road purpose."

Laws of 1937, chapter 187, p. 763, § 54 (Rem. Rev. Stat., Vol. 7A, § 6450-54), provides in part that

"No monies shall be paid by the state auditor from funds accruing to the credit of any county in the motor vehicle fund for deposit in the county road fund of any county except on vouchers for reimbursement of proper county road expenditures theretofore made and properly supported and approved by the director of highways. All funds for the construction, alteration, repair, improvement and maintenance of the county roads of any county or for any other proper county road purpose shall be deposited in and expended from the county road fund of such county and no other fund . . . The board of county commissioners are empowered to expend funds from the county road fund or register warrants against the county road fund in anticipation of reimbursement thereof from funds credited or to be credited to such county in the motor vehicle fund."

For many years, appellant itself operated and maintained ferry boats on Lake Washington, pursuant to authority conferred by statute. Laws of 1895, chapter 130, p. 341; Laws of 1899, chapter 29, p. 39; Laws of 1919, chapter 115, p. 282; Rem. Rev. Stat., § 5477 [P. C. § 2403]. It then decided to lease the boats, and, pursuant to such determination, entered into various leases, the last one being the lease of January 1, 1928, referred to herein. This court had occasion to pass upon the status of appellant under such lease in *Norton v. Anderson,* 164 Wash. 55, 2 P. (2d) 266, wherein we stated:

"Under the authority granted by the statute cited in the beginning of this opinion, the county undertook

to provide the public with ferry service. It acquired ferry-boats and built landings and docks, and for a long time operated and maintained the boats and terminals itself as a common carrier. Then it made the lease that has been mentioned, whereby, in legal effect under the statute, *it maintains the ferry service by having the lessee operate the boats and use the terminals.* *State ex rel. Jackson v. King County,* 29 Wash. 359, 69 Pac. 1106.

"The county's position is not at all what it would have been had it disposed of the ferries absolutely, *retaining no measure of control over their future operation.* Under the lease, it still exercised power conferred by the statute, and in doing so it might lawfully assume such duties as it saw fit so long as the duties were necessary to be performed in the exercise of the power." (Italics ours.)

In *State ex rel. Washington Nav. Co. v. Pierce County,* 184 Wash. 414, 51 P. (2d) 407, we stated: "It must be granted that a public ferry is a part of a highway and necessarily subserves public interest and convenience."

We think there can be no question but that, under the decisions in the *Pierce County* and *Norton* cases, *supra,* the ferries herein are a part of appellant's county road system, and that they are being maintained by the county by virtue of a lease with J. L. Anderson, with a measure of control in operation retained by appellant.

We think it is almost inescapable that the legislature, in enacting § 53, *supra,* considered public ferries, operated or maintained by a county, a part of the county road system, and we think it follows as a reasonable conclusion that it was the intention of the legislature to make the words "for the construction, alteration, repair, improvement, or maintenance" apply to such ferries, as a part of the county road system. If such is not the interpretation to be given to this

section, we can see no reason for mentioning ferries therein.

[2] We find the word "maintenance" to have a broad meaning, as construed by our own court in the *Jackson* and *Norton* cases, *supra*, and by the courts in various other jurisdictions. In *Crow v. Tinner*, 47 S. W. (2d) (Tex. Civ. App.) 391, the constitution of the state of Texas authorized the legislature to pass local laws for maintenance of public roads. The legislature passed an act which provided for the reimbursement of county commissioners for the expense of operating their automobiles when inspecting county roads. It was contended that the act was unconstitutional. The court therein stated:

"We must first ascertain what is meant by *maintenance* of roads. It has been held that the phrase 'maintenance of public roads' is not restricted literally to the manual labor of repairing existing roads. The phrase has a broader meaning and includes the doing of everything necessarily and appropriately connected with and incidental to the laying out, opening, and the construction of public roads and the maintenance of an efficient road system." (Italics ours.)

The act was held not to violate the constitutional provision.

In *French v. Millville*, 66 N. J. L. 392, 49 Atl. 465, the supreme court of New Jersey, in passing upon the question of whether or not a charter provision which authorized the city to erect and *maintain* in the city a city hall, school house, and such other public buildings as may be necessary, had the authority to insure such buildings against loss by fire, stated:

"As incidental to the power thus granted, the city acquired the right to contract for indemnity against loss by the burning of such building."

In *State ex rel. Boddenhagen v. Chicago, M. & St. P. R. Co.*, 164 Wis. 304, 159 N. W. 919, the supreme court

of Wisconsin, in construing a statute which required a railroad to erect and maintain a viaduct over a county road, held that the statute applied so as to require the railroad to maintain the viaduct after it had been broken down by the negligence of a member of the public in running a steam shovel over it, as the word "maintain" includes keeping up, preserving, and rebuilding in case of destruction. See, also, *Dallas County v. Plowman,* 99 Tex. 509, 91 S. W. 221.

While the question was not directly raised, this court, in the case of *King County v. United States M. & S. Ins. Co.,* 150 Wash. 626, 274 Pac. 704, recognized that King county had the right to insure its ferries operating on Lake Washington.

There is a well settled rule that officers vested with the power to control and manage public property have implied powers to carry insurance thereon. 14 Am. Jur. 208, § 38. See, also, to the same effect, 100 A. L. R. 602; 3 McQuillin on Municipal Corporations (2d ed.), § 1228.

Respondent contends that, in any event, marine insurance is an operating cost, and not a maintenance cost of ferries. This contention is apparently based upon the testimony of Stewart Krieger and H. E. Tompkins, as there is no other testimony in the record relative to operation. Krieger's testimony was offered for the purpose of showing that the state recognized that insurance was a proper item to be taken into consideration for the purpose of fixing rates to be charged by private water transportation companies, and was to the effect that insurance was carried under the item of operating expense accounts. Mr. Tompkins' testimony was to the effect that no company would attempt to operate ferries on Lake Washington without marine and fire insurance. We do not think that either Krieger or Tompkins, in using the word "operate," meant to

distinguish it from maintenance, but used that term with reference to one who was carrying on or conducting such a ferry business.

We are also of the opinion that the word "maintain," as used herein, is broad enough to include the term "operate." In *People ex rel. Reynolds v. Atchison, T. & S. F. R. Co.*, 300 Ill. 415, 133 N. E. 250, the court stated:

"The maintenance of a detention home involves those things having to do with carrying on the business for which it is built or established. 'Maintain' and 'operate' have been held to have the same meaning when used in connection with a public institution."

*In re Boston*, 221 Mass. 468, 109 N. E. 389, a commission appointed and acting pursuant to an act of the legislature assessed certain cities with the cost of construction and maintenance of a draw bridge. The contention was made that the statute made no provision for apportioning the cost of operation of the draw bridge. Answering this, the court said:

"The contention that the statute makes no provision for the apportionment of the expense of operating the draws of the bridges cannot be supported. . . . The word 'maintenance' in §§ 1 and 3 of St. 1911, c. 581, when applied to the subject matter to which it relates, is of signification broad enough to include the operation of the draws."

A careful reading of § 53, *supra*, is convincing of the fact that the legislature intended to give a broad meaning to the word "maintenance," as therein used, and we think it reasonable to assume that, under maintenance, the legislature intended to authorize payment from the motor vehicle fund of those items which would reasonably be considered necessary and incidental to the carrying on of an efficient ferry service.

That ordinary business judgment would require that

marine insurance be carried on ferry boats, we think will not be disputed, nor do we think it will be disputed that county commissioners have the implied power to insure county property, nor that it would be their duty to insure ferry boats belonging to the county and being operated as public ferries, because of the special hazards incident to such operation from fire and perils of the sea.

We agree with appellant that no fine line of distinction should be drawn between the actual physical repair, construction, or maintenance of a ferry boat and the purchase of insurance so that such vessels can be repaired or replaced in the event of loss through fire or hazards of navigation.

Having all of these things in mind, we are of the opinion that marine insurance on the ferry boats herein, owned by appellant and operated as public ferries under lease as a part of the county road system, is a proper item to be paid as maintenance from the motor vehicle fund allocated to appellant, and that respondent wrongfully refused to approve the voucher presented to him and thus allow the county road fund of appellant to be reimbursed for money expended in the payment of premiums for such insurance.

The judgment is reversed, and remanded with instructions to the trial court to grant the writ as prayed for by appellant.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.