[No. 13007–6–II.   Division Two.   July 17, 1991.]

CAROLYN J. BURGDORF, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, *Respondent.*

*Jerry Dean Mitchell,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Rene David Tomisser, Assistant,* for respondent.

PETRICH, J.—At what point does the State take on the duty to exercise the highest degree of care to a person who enters a State Department of Transportation ferry terminal seeking passage on the state ferry system? Carolyn Burgdorf tripped, fell, and injured herself while inside the Bremerton ferry terminal lobby after entering the terminal with the intent to board a ferry. Burgdorf argues that the

State had the duty to exercise the highest degree of care toward her as a ferry system passenger. The trial court disagreed, refused alternate instructions that Burgdorf was entitled to the highest degree of care and that her status as a passenger was a jury question, and then instructed the jury that the Department owed Burgdorf the duty of ordinary care. Burgdorf appeals from an adverse jury verdict. We affirm.

In July 1987, Carolyn Burgdorf arrived at the Bremerton ferry terminal to catch the ferry to Seattle. She was walking through the Bremerton ferry terminal when she tripped over a ridge or seam cap, fell, and broke her arm. The area is open to the public and is used to gain access to a museum, the restrooms, the telephones, and the ferry.

Burgdorf assigns error to the trial court's refusal to give her proposed instructions.[1] She claims that the court should have determined that she was a passenger as a matter of law and instructed the jury that the State had the duty to exercise the highest degree of care. A common carrier has a duty to its passengers to use the highest degree of care in its business operations. *Benjamin v. Seattle,* 374 Wn.2d 832, 833, 447 P.2d 172 (1968). The State Department of Transportation has all the obligations, duties, and rights of a common carrier. RCW 47.60.220.[2] However, a common carrier only owes the duty of ordinary care to a prospective passenger who has not attained passenger status. *Evans v. Yakima Vly. Transp. Co.,* 39 Wn.2d 841, 846, 239 P.2d 336 (1952).

The test for determining whether one is a passenger has five parts. The plaintiff must show the following:

---

[1]Burgdorf fails to refer by number to each instruction that she contends was improperly refused, violating RAP 10.3(g). However, we may consider her argument because she clearly argues in her brief that the trial court erred in refusing to give alternate proposed instructions 7 and 9. *See State v. Clark,* 53 Wn. App. 120, 123, 765 P.2d 916 (1988), *review denied,* 112 Wn.2d 1018 (1989).

[2]RCW 47.60.220 provides in part: "The department has all the obligations, duties, and rights of a common carrier of persons and property in its operation of ferries, terminals, or other facilities used in its ferry operations . . .."

(1) place (a place under the control of the carrier and provided for the use of persons who are about to enter carrier's conveyance); (2) time (a reasonable time before the time to enter the conveyance); (3) intention (a genuine intention to take passage upon carrier's conveyance); (4) control (a submission to the directions, express or implied, of the carrier); and (5) knowledge (a notice to carrier either that the person is actually prepared to take passage or that persons awaiting passage may reasonably be expected at the time and place).

*Zorotovich v. Washington Toll Bridge Auth.*, 80 Wn.2d 106, 108–09, 491 P.2d 1295 (1971). In *Zorotovich*, the plaintiff was outside the Kingston ferry terminal when he was injured by a motor vehicle as he stepped away from a diamond–shaped "area of safety" near a ticket selling booth. He was following the ticket seller's directions to get to the ticket booth to buy his ticket. The court determined that he was a ferry passenger because the place where the plaintiff was injured "was one under the sole control of the carrier and was intended solely for the use of persons entering or departing from carrier's conveyance." *Zorotovich*, 80 Wn.2d at 109.

While the facts in *Hart v. King Cy.*, 104 Wash. 485, 177 P. 344 (1918), in which the court found the plaintiff was not a passenger, were similar to those in *Zorotovich*, the *Zorotovich* court distinguished *Hart* because the plaintiff there was injured in an area that was under the joint control of a streetcar company and the operator of the ferry and because that area was open to the public. *Zorotovich*, 80 Wn.2d at 110.

We hold that, like the plaintiff in *Hart*,[3] Burgdorf was not a passenger when she was injured because she was injured in the ferry terminal lobby, an area open to the public. The lobby is not a boarding area. The general public may use the lobby for access to a museum, the telephones,

---

[3]Burgdorf argues that reasoning under *Hart* is precluded by the statute enacted several years after *Hart* was decided. We disagree. While the statute explicitly imposed the common carrier's highest duty of care on the Department of Transportation in its operation of ferries, terminals and other facilities, that degree of care is still owed only to its *passengers*.

the restrooms, and the ferry. Passengers, prospective passengers, persons waiting to meet passengers, and the general public all use this lobby. In sum, Burgdorf was not a passenger because she failed to show the first element of the *Zorotovich* test; therefore, the State did not owe her the highest degree of care.[4]

██ Burgdorf also argues that her status as a passenger was a question of fact for the jury. However, she presented no evidence from which a jury could infer that she was a passenger. The trial court did not err in determining her status as a matter of law because this is a "clear case where the evidence is so conclusive that reasonable men [and women] could not differ and the court would have committed error to have submitted the issue to the jury." *See*

---

[4]As explained above, the *Zorotovich* court sets forth the general test to determine passenger status, stating that plaintiffs must show that they are injured in "a place under the control of the carrier and provided for the use of persons who are about to enter carrier's conveyance". *Zorotovich*, 80 Wn.2d at 108–09. It then qualified this element, finding that the plaintiff in that case was a ferry passenger because he was injured in a place that "was one under the sole control of the carrier and was intended solely for the use of persons entering or departing from carrier's conveyance." *Zorotovich*, 80 Wn.2d at 109.

Burgdorf argues that the *Zorotovich* court qualified the first element of the general test because its plaintiff was injured in a transition area. She claims that in such a case, a stricter test is necessary because the court should establish that the ferry system had dominion and control over the area before imposing a higher duty of care. Thus, she argues that the stricter test is applied only when one is injured in a transition area. She claims that she was not injured in a transition area and, therefore, that she was a ferry passenger because she satisfied the first element as it is generally set forth. *See Zorotovich*, 80 Wn.2d at 108.

We reject this argument without commenting on its merits because we are satisfied that Burgdorf was injured in a transition area. Therefore, even under her theory, the "stricter" test applies here.

*Sweek v. Municipality of Metro. Seattle,* 45 Wn. App. 479, 482, 726 P.2d 37 (1986).

Affirmed.

WORSWICK, C.J., and MORGAN, J., concur.