Strafford, }
Oct. 4, 1910. }

### TURNER v. COCHECO MFG. CO.

In an action of negligence against an employer, certain evidence deemed sufficient to warrant a finding that the injuries complained of resulted from an abnormal danger of which the defendant had knowledge, but concerning which the plaintiff was not informed and the risk of which he did not assume.

One who is compelled to choose upon the instant between different avenues of escape from danger is not chargeable with negligence as matter of law because he adopts the more hazardous course.

In the absence of a contrary finding, it is to be assumed that objectionable remarks by counsel in an opening statement were disregarded by the jury, in conformity with specific instructions of the court.

A verdict is not to be set aside because counsel in the course of argument draws an unwarranted inference from facts in evidence, and especially when there is an immediate retraction and explanation.

A statement in argument that medical witnesses were "retained" is not objectionable, when there is evidence that they were in the pay of the party calling them and that their testimony was especially favorable to his cause.

An erroneous statement of the law by counsel in argument does not constitute reversible error, if corrected by proper instruction of the court.

Whether photographs are sufficiently accurate to authorize their admission as evidence is a question of fact determinable by the trial court.

The opinion of an expert witness is admissible when it is apparent that without such testimony the jury might not form correct conclusions from facts in evidence.

Witnesses who are found to possess special knowledge may be permitted to give their opinions in response to hypothetical questions based upon facts in evidence.

An objection to evidence on the ground of irrelevancy will be regarded as waived unless made at the trial.

If a person called as a witness is employed by a party to the suit, he may be cross-examined with a view of discrediting his testimony, the extent of such an inquiry being a matter within the discretion of the presiding justice.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the September term, 1908, of the supe-

rior court by *Wallace*, C. J., on the defendants' exceptions to the admission of evidence, to the remarks of counsel, and to the denial of a motion for the direction of a verdict in their favor.

*Page, Bartlett & Mitchell* and *Pierce & Galloway* (*Mr. Pierce* orally), for the plaintiff.

*Edward C. Stone* (of Massachusetts), *Kivel & Hughes*, and *Burnham, Brown, Jones & Warren* (*Mr. Kivel* and *Robert L. Manning* orally), for the defendants.

YOUNG, J.   1. A fire which originated in a belt box on the third floor of the defendants' mill entirely destroyed the fourth and fifth floors.   The plaintiff, who worked on the fifth floor, slipped while attempting to escape from the mill on a rope, fell to the ground, and received the injuries complained of.   The belt box in which the fire originated extended from the casing of the fly-wheel up through, and to a point six feet above, the third floor.   The cotton lint which collects in all parts of the mill had not been taken out of this box for a long time before the fire, and so great a quantity had collected in it and in the casing of the fly-wheel that it was impossible after the fire started to control it with the appliances the defendants provided for that purpose.   There was evidence justifying the conclusion that such a belt as this one was, running under the conditions disclosed, would generate static electricity and emit sparks sufficient to set the lint on fire; and it was also competent for the jury to find that the ordinary man would not have permitted the lint to collect to such an extent in such a belt box, that the defendants did and the plaintiff did not know it had collected and of the danger of fire from electric sparks, and that they failed to notify him of the situation he was in.   Consequently it can be found that they were in fault, and that the plaintiff did not assume the risk incident to an uncontrollable fire in the mill caused in this manner.   *Goodale* v. *York*, 74 N. H. 454.

2. It can be found that the plaintiff was free from fault in attempting to leave the mill in the way he did, even if he knew there was a fire escape on the ell.   The room was dark and full of smoke. He was excited and saw other persons escaping from the mill in the way he attempted to escape.   It cannot be said that in that situation the ordinary man would not have done what he did.

3. The court instructed the jury to disregard that part of the plaintiff's opening statement of which the defendants complain and also the remark of the court to which an exception was taken. That disposes of these exceptions; for it must be assumed, in the absence of evidence to the contrary, that the jury obeyed instructions.   *Hoxie* v. *Walker*, *ante*, 308.

4. When the attention of the plaintiff's counsel was called to the fact that he was criticising Dr. Morgan, he retracted all of the statement objected to, except that " Dr. Morgan apparently changed his base suddenly." Although there was no direct evidence to that effect, it does not appear to have been the assertion by counsel of a fact as of his own knowledge, but rather an inference or conclusion drawn in argument from a view of the evidence and the appearance of the witness as it laid in the counsel's mind; and therefore the statement did not amount to reversible error. *Conn. River Power Co.* v. *Dickinson, ante,* 353, 358.

5. The statement of counsel in argument that Dr. Tolman and Dr. Sullivan were retained by the defendants is not objectionable, for it was based on evidence that they were in the pay of the defendants and that instead of attempting to lay all the facts before the jury they were trying to belittle the plaintiff's injuries. If they were, it was not unfair to characterize them as being retained by the defendants. In other words, it cannot be said as a matter of law that this part of the argument was either unfair or without evidence to sustain it.

6. If counsel's statement that the defendants had used all their ingenuity to prevent the plaintiff from showing the cause of the fire was unwarranted, it furnishes no reason for disturbing the verdict, for he withdrew all that was objectionable when he said : " I want to withdraw everything I have said with reference to that, except this : that in so far as you have observed the appearance of the witnesses that they have introduced, both experts and all, the conduct and appearance of Mr. Fish as a witness on the stand and what he said, the nature of his testimony and the conduct and appearance of those witnesses whom they control, I want to call your attention to these things and ask you to consider whether they are merely trying to show you all the facts in this case, or whether they are trying to conceal some of the facts."

7. The remarks of the plaintiff's counsel about being bothered by the defendants' numerous exceptions do not appear to have been prejudicial. If they were of that character, the error was correctible by the trial justice. *Hoxie* v. *Walker, supra.* Nor was the remark, that the defendants offered no evidence that there was no such book as the one the plaintiff's witnesses said he had read on the subject of electricity, untruthful or improper as a matter of law.

8. Counsel's statement in respect to the measure of damages was erroneous, but he was told by the court in the presence of the jury that it was not the law and instructed to withdraw it. It is not customary to disturb a verdict because one of the contentions of

the prevailing party as to the law applicable to the matter happens to be unsound.

9. The evidence that the great amount of loose cotton in the room made it difficult to put out the fire, and that in respect to sparks having been seen coming from this belt box on a previous occasion and to there being a great amount of oily lint inside the casing of the fly-wheel, was relevant to the issue of the defendants' care and of their knowledge.

10. Two photographs of the mill taken soon after the fire were admitted in evidence, subject to the defendants' exception that they did not truly represent the building. The condition of the building after the fire might naturally throw some light on its condition at the time of the fire. Whether the photographs were sufficiently accurate for this purpose is a question of fact determinable at the trial. *Pritchard* v. *Austin,* 69 N. H. 367.

11. It was competent for the plaintiff to show the knowledge of the defendants in respect to the comparative safety of wooden and fire-proof belt boxes on the issue of their care, and the testimony in relation to this matter was not inadmissible merely because it called for an expression of a witness' opinion.

12. The examination of the defendants' superintendent about the roof burning off " over the heads of these fellows," and as to whether he got them all out " dead or alive," was not improper as a matter of law. If some of the men were burned to death before they could escape from the room, that fact was relevant to the issue of the. plaintiff's care.

13. It was the duty of both the plaintiff and the defendants to do what the ordinary man would have done under similar circumstances. It was competent, therefore, for the plaintiff to show that the defendants knew long before the fire of a safer method of enclosing their belts. Consequently so much of the testimony of the superintendent as related to this subject was relevant to the issue of the defendants' care.

14. One step toward proving that the sagging of the sixty-foot belt caused the fire was to show that under some conditions it might sag enough to come in contact with the belt box. As it is clear that the jurors might not form correct conclusions from the evidence as to the physical facts without the aid of the opinions of experts, their testimony was properly admitted. *Leighton* v. *Sargent,* 31 N. H. 119, 133; *Keefe* v. *Railroad, ante,* 116, 121.

15. It can be found that under some conditions the middle of the sixty-foot belt would occasionally come quite near the belt box. This proposition was not seriously disputed, but what those conditions were and whether they existed were in dispute. The plaintiff offered evidence tending to prove that the belt was liable to

sag and wabble when it was first started on a cold morning, and that it was such a morning when the mill burned. It can be found, therefore, that the condition necessary to cause the belt to come near, or even in contact with, the belt box existed at the time of the fire.

16. There was evidence that this belt ordinarily ran from five to seven inches from the third floor of the mill, that the floor was covered with cotton lint, and that such a spark of electricity as is developed by a long belt running at high speed will jump nine inches and will ignite lint cotton. There is evidence, therefore, that this fire may have been caused by an electric spark coming in contact with lint cotton.

17. The hypothetical questions put to Higgins, Worcester, and Hodgdon were not inadmissible as a matter of law because they called for an expression of the opinions of the witnesses as to the probable cause of the fire. The court found that these witnesses possessed special skill in the subjects inquired of. If the jury found the facts to be as assumed in the hypothetical questions, no sound reason can be given for not permitting the jury to avail itself of the special knowledge of these witnesses. *Davis* v. *Railroad, ante,* 467, 469.

18. It cannot be said that the questions put to Worcester and Hodgdon were improper as a matter of law, or that the verdict should be set aside, because the facts that sparks had been seen coming from the belt box on a previous occasion and that there was a great amount of lint cotton in the room were irrelevant to the issue of the cause of the fire; for the defendants did not object to the question on that ground, but on the ground that there was no evidence tending to prove these facts. The objection which they now urge is therefore not open to them.

19. The fact that Dr. Tolman was employed by the defendants was relevant to the issue of his credibility. That being so, the extent to which the plaintiff should be permitted to go into the matter for the purpose of discrediting him was for the presiding justice.

20. There is no merit in the defendants' exception to the examination of Dr. Morgan. The court could permit the plaintiff to cross-examine him, and there was evidence tending to prove all the facts on which the hypothetical questions excepted to were based.

21. If the defendants had thought it necessary for their protection, they could have asked the court to instruct the jury that whenever there was a dispute as to whether a particular fact had been put in evidence, it should rely on its own memory; and that it should not consider the answer to any of the hypothetical questions for any purpose, unless it found that all the facts stated

in it were established by weight of evidence. If such instructions were given, or even if the defendants neglected to ask for them, they cannot now be heard to complain if an examination of the record shows that there was no evidence tending to prove all the facts assumed in one or more of the questions excepted to.

22. If Fish, the superintendent, did not say he feared the idler pulley would cause a fire, it furnishes no ground for disturbing the verdict; for the court instructed the jury that if he did not say he feared it, not to consider the argument for any purpose whatever.

*Defendants' exceptions overruled.*

All concurred.