### GAUGHAN v. MICHIGAN INTERSTATE MOTOR FREIGHT, Inc.
### No. 6302.

Circuit Court of Appeals, Seventh Circuit.
Jan. 8, 1938.

Rehearing Denied Feb. 7, 1938.

Emil C. Wetten, Charles H. Pegler, and Paul N. Dale, all of Chicago, Ill., for appellant.

Joseph D. Ryan, Edmund M. Sinnott, and Louis P. Miller, all of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and BALTZELL, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment against defendant wherein plaintiff was awarded damages for the alleged wrongful death of her husband, Anthony Gaughan.

The accident which resulted in the death of the decedent occurred on April 20, 1934, at about 1:30 in the morning at the intersection of Thirty-First Street and Wentworth Avenue in the City of Chicago. The former street extends east and west, is about 42 feet in width, while the latter street extends north and south and is substantially the same width. Both streets have side walks on each side and adjacent thereto some 12 feet in width. The intersection is in a closely built up business section, with buildings on each side of both streets extending to the street line. Plaintiff's intestate, on the night in question, was caring for a tav-

ern owned by his brother at 4136 Wentworth Avenue, which was a few blocks south of the point of the accident. He remained at the tavern until shortly before the accident, with four friends, Sheehan, Grogan, Prendergast and Gill. The latter had driven a De Soto sedan to the tavern, and at the request of Prendergast, who lived several miles north of the tavern, agreed to drive him to his home. The other persons accompanied them on the trip for the purpose, as they said "of getting some fresh air." Gill drove the car north on Wentworth Avenue to the point of the accident, with Prendergast in the front seat and to his right. In the rear seat was decedent on the left hand side and Sheehan and Grogan to his right.

The defendant was operating an International tractor and semi-trailer on a trip from Kalamazoo, to Chicago, driven by one Blanchard. The total length of the tractor and trailer was about thirty feet. The trailer was loaded with 8 tons of paper, making a gross weight of some 15 tons. The truck was equipped with air brakes and the usual head lights. It entered Thirty-First Street from State Street about four blocks east of Wentworth Avenue and was traveling in a westerly direction, where it passed under a railroad viaduct where the road way was depressed some 3 and ½ feet below the normal street level and returned to the normal level about 250 feet east of Wentworth Avenue. As the De Soto car traveled north on Wentworth Avenue, and the truck traveled east on Thirty-First Street, they collided at the intersection, where plaintiff's intestate, together with Sheehan and Grogan were instantly killed. Prendergast died before the trial. The only eyewitnesses to the accident were Gill, the driver of the motor car, and Blanchard, the driver of the truck, and their testimony is in hopeless conflict. The former testified that in driving north on Wentworth Avenue, he averaged 25 to 30 miles per hour, slowing down for all intersecting street lines to a speed of 12 to 15 miles per hour; as he approached the intersection in question he looked in both directions on Thirty-First Street and as he reached the building line on the south side of said street, he could see to the east a distance of 145 to 150 feet and saw no vehicle approaching; that he then accelerated his speed and that when his car was on the east bound car line, he, for the first time, discovered defendant's truck bearing down on him from the right some 50 feet away and traveling at a speed of 40 to 50 miles per hour. On the other hand, defendant's driver testifies that when he arrived at the east street line of Wentworth Avenue, his truck was moving about 15 miles per hour; that just prior to this time he saw the lights of the De Soto car approaching from his left about 150 feet away, traveling at a speed of about 45 miles per hour; that he immediately shut off the gas and the ignition of the truck, applied the brakes and succeeded in bringing it to a stop within 23 or 24 feet, and at the moment of the collision was traveling at the rate of 2 or 3 miles an hour and that the truck moved not more than 3 or 4 feet after the impact. After the collision, the De Soto car was lodged against a steel trolley post located on the curb at the northwest corner of the intersection with the right side of its body practically demolished. According to Blanchard, the De Soto car collided with the truck on the left side thereof near the rear of the cab truck, which at the moment of the impact, was headed in a northwesterly direction and that it "careened right into the trolley post." According to the testimony of Gill, the automobile was struck in the middle of its right side by the truck and hurled against the trolley post. Each side insists the physical conditions corroborate its theory of how it happened. There seems to have been little, if any, damage done to the front end of the De Soto car. There was damage to the left side of the truck, several feet to the rear of its front end. There was also some damage to the truck fenders, especially the right front fender which was bent down on the wheel so that the wheels could not be steered until the fender was pried therefrom. Some of the witnesses who arrived shortly afterwards stated the front end of the truck was only 2 feet from the automobile, while others placed the distance at 14 or 15 feet.

The contested issues, as stated by defendant, are: First, the verdict of the jury was contrary to the manifest weight of the evidence; second, the court erred in admitting in evidence certain photographs; third, the court erred in refusing to submit to the jury the issue as to whether or not Gill, the driver of the De Soto car, and the deceased, as well as the other occupants of the car, were, at the time of the accident, engaged in a joint enterprise and in refusing to instruct the jury on that issue.

On the first contested issue, it is insisted that plaintiff failed to sustain the burden of proving negligence on behalf of the de-

fendant; that the accident and resultant damages were the result of the contributory negligence of the driver of the De Soto car, and that the deceased, himself, was not in the exercise of ordinary care for his own safety.

■ It is very strenuously urged by defendant that the verdict is contrary to the manifest weight of the evidence citing a number of authorities, mostly those of the Appellate Courts of Illinois that under such circumstances it is our duty to reverse. We do not understand that the rule in the federal courts is as broad as that insisted upon. In Fairmount Glass Works v. Cub Fork Coal Company, 287 U.S. 474, on page 481, 53 S.Ct. 252, 254, 77 L.Ed. 439, the court said: "The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals."

In Booth v. Gilbert, 8 Cir., 79 F.2d 790, on page 792, we find the rule stated thus: "It is, we think, too well settled for argument to the contrary that a federal appellate court may not consider whether or not a verdict of a jury is against the weight of the evidence, if so it be that there is substantial evidence to uphold it. New York, L. E. & W. R. Co. v. Winter's Adm'r, 143 U.S. 60, 12 S.Ct. 356, 36 L.Ed. 71; Ætna Life Ins. Co. v. Ward, 140 U.S. 76, 11 S.Ct. 720, 35 L.Ed. 371. The matter of determining whether a verdict is, or is not, against the weight of the evidence, is for the trial court to consider on a motion for a new trial; nor is the granting or refusal of such a motion assignable as error in an appellate court."

In U. S. v. Huddleston, 7 Cir., 81 F.2d 593, on page 595, where was involved the question of the sufficiency of the evidence to sustain the judgment, this court said: "We would not be warranted in substituting our judgment thereon for that of the jury and the court, notwithstanding the possibility or even the likelihood that our own conclusion would have been otherwise. Herencia v. Guzman, 219 U.S. 44, 31 S.Ct. 135, 55 L.Ed. 81; United States Express Co. v. Ware, 20 Wall. 543, 22 L.Ed. 422."

■ We think the language just quoted is pertinent to the situation here presented. We are not authorized to become the tryer of the facts. That is a matter peculiarly within the province of the jury. Otherwise, the right of trial by jury would be an idle and useless ceremony. There may be, and, no doubt are, cases where this court would be justified in reversing a case on the factual situation, but not where the testimony is as conflicting as it is here. We agree with defendant, there are some circumstances which tend strongly to corroborate its theory. For instance, the driver of the De Soto car, after reaching the south street line on Thirty-First Street, had a plain view of vehicles approaching from the east. We are unable to find a satisfactory excuse for his failure so to do. Of course, if the truck was traveling at the high rate of speed claimed, that might be the excuse. If so, it then becomes very much of a question as to how a truck loaded as this one was, could have stopped within such a short distance. The damage done to the left side of the truck lends some support to the theory that it was run into by the auto, but if so, how was the right front fender of the truck so badly damaged? The fact that the De Soto car was damaged on the right side, with its front end intact, supports plaintiff's theory that it was run into by the truck. It is also significant that Blanchard, in a statement made shortly after the accident, admitted "the left front of my tractor struck the north bound automobile which was knocked up against a post on the northwest corner." It would serve no useful purpose for us to further speculate, or to undertake to reconcile the conflicting testimony. We have done so to some extent to indicate the futility of a reviewing court substituting its judgment for that of the jury. We are satisfied there is evidence sufficient to sustain the verdict of the jury and that the court properly entered judgment thereon.

■ Complaint is made of the admission of certain photographs of the De Soto car, taken by a member of the Chicago Police Force as a part of his official duties some 30 minutes after the accident. It is not questioned but what they correctly portray the actual condition of the car at the time they were taken. Complaint is made that in the meantime the car had been moved and considerably dismantled. The record discloses that the car had been moved and dismantled to the extent of removing the

doors on the right side thereof so that the occupants of the car might be extricated. At the time the photographs were offered, objection was made in these words:

"I object to the pictures if the court please, because they were taken a considerable time after the accident and after the right hand side of the car had been torn to get the injured men out. In other words, the pictures do not represent the car as it was immediately after the accident. If you care to look at them you can see for yourself.

"The Court: The evidence is undisputed that those doors were pried open on that side and the jury can bear that fact in mind. I think the photographs would be enlightening, and therefore they may be received."

It seems apparent, not only that the testimony disclosed the changes to which the car had been subjected between the time of the accident and the taking of the pictures, but the court, in admitting the exhibits, expressly called the change to the attention of the jury. We think they were properly admitted.

Nor was there error in the refusal of the court to instruct the jury with reference to a theory of joint enterprise. There was no evidence to sustain such a theory. Neither was there any evidence that the driver of the De Soto car was either the servant or agent of the deceased. The latter did not own the car, had no control over it and merely accompanied the driver of the car on a pleasure trip.

The judgment is affirmed.