**WASHINGTON COCA COLA BOTTLING WORKS, Inc., v. KELLY.**

No. 218.

Municipal Court of Appeals for the District of Columbia.

Dec. 1, 1944.

Richard W. Galiher, of Washington, D. C. (Henry I. Quinn, of Washington, D. C., on the brief), for appellant.

Lester Wood, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Plaintiff recovered a verdict of $1250 in a suit for injuries caused by drinking from a bottle of coca cola manufactured by defendant, in which a dead mouse was found. Defendant appeals.

The first assignment of error deals with the refusal of the trial judge to permit the jury to inspect the plant of defendant where the coca cola was prepared and bottled. The request was made at the outset of the trial, repeated at the end of plaintiff's case, and again at the close of all the evidence.

This question of inspection by the jury, or "view" as it has frequently come to be called, has been many times considered and decided. So far as we are aware the decisions are uniformly to the

effect that appellate courts will not reverse a ruling granting or refusing a view by the jury unless an abuse of discretion is shown. In most states the procedure is regulated by statute.[1] But even. in jurisdictions like our own where there is no statute upon the subject, trial judges have the power in the exercise of their sound discretion to order such a view.[2]

In considering an application for a view a judge may well keep in mind the rule thus tersely summarized by Wigmore:[3]

"Where the object in question cannot be produced in Court because it is immovable or inconvenient to remove, the natural proceeding is for the tribunal to go to the object in its place and there observe it."

Also helpful will be the following language in an early Illinois case:[4]

"If the parties had the right [upon the trial] to prove by oral testimony the condition of the property at the time of the trial, * * * upon what principle can it be said the court could not allow the jury in person to view the premises, and thus ascertain the condition thereof for themselves? * * * If a plat or a photograph of the premises would be proper evidence, why not allow the jury to look at the property itself instead of a picture of the same? There may be cases where a trial court should not grant a view of the premises where it would be expensive, or cause delay, or where a view would serve no useful purpose. But this affords no reason for a ruling that the power to order a view does not exist or should not be exercised in any case. * * *"

He may also properly ask: Will it give rise to too great expense or unduly prolong the trial? Will it serve a useful purpose and help the jury better to understand the facts? Balancing these considerations, he should be in a position to form a considered judgment as to whether the ends of justice would best be served by ordering the jury to the scene or by letting them depend entirely upon the testimony, oral and documentary, made available to them in the court room.

■■ Here it was probably the part of wisdom to deny the application when it was first made at the beginning of the trial. At that time there were no unusual circumstances which seemed to indicate a different course. But in the later stages of the trial it rather clearly developed that a view would be of value. Plaintiff's proof of negligence was based upon circumstantial evidence. She proved only—and under Fisher v. Washington Coca-Cola Bottling Works, 66 App.D.C. 7, 84 F.2d 261, 105 A.L.R. 1034, she was required to prove no more—that the mouse was in the drink which defendant had manufactured, that she drank from it and suffered resulting injury. That gave rise to the res ipsa loquitur doctrine and established her prima facie case. Defendant, being unable to account for this particular bottle, depended upon the testimony of its assistant manager who detailed the various steps by which such drink was usually manufactured, and described the mechanical safeguards against contamination and the complicated machinery employed. Defendant attempted to clarify this testimony by photographs of the machinery, but was not permitted to do so. (This question we shall discuss later.) Thus a point was reached when the jury might with profit have visited the plant and supplemented by visual means that which they had heard from the witness stand. The plant was but a few blocks from the courthouse. It was, with one minor and irrelevant exception,[5] in identically the same condition as at the time plaintiff's drink was bottled. Nor does the record show that the inspection would have caused undue expense or delay.[6] Taking all these circumstances together we feel the trial judge should in the exercise of his discretion have granted defendant's re-

[1] See Wigmore on Evidence, 3rd Edition, Section 1163, Page 273 where under footnote 8 there is set out a complete resume of the statutes.

[2] Hodge v. United States, 75 U.S.App. D.C. 332, 126 F.2d 849; Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375; Coleman v. Chudnow, D.C.Mun. App., 35 A.2d 925.

[3] Wigmore on Evidence, 3rd Edition, Section 1162.

[4] Springer v. Chicago, 135 Ill. 553, 26 N.E. 514, 515, 12 L.R.A. 609.

[5] The only change was in a conveyor belt which transported to the loading station the cases of filled and sealed bottles, and had nothing to do with the cleansing or protecting of the bottles, the preparation of the fluid or any other step connected with the actual manufacture of the drink.

[6] After the testimony had been concluded the case was continued two days hence, thus leaving an intervening day when the jurors would not be engaged in any other trial.

quest for an inspection of the plant by the jury. We think his refusal to do so deprived the jury of the means of better understanding and interpreting the evidence and, especially in view of the exclusion of the tendered photographs, prejudiced defendant and constituted reversible error.

■ Six photographs were offered showing various parts of defendant's plant and machinery. They were admittedly taken five years before plaintiff's drink was bottled, but the uncontradicted evidence was that they faithfully depicted the plant exactly as it was at that later date, that the machinery had not been moved and was in identically the same condition as at the time of plaintiff's injury, except for a minor difference which had nothing to do with the case.[7] The evidence was further that except for occasional routine repair work on the machinery, nothing had been done to alter its appearance or operation. We rule it was error to exclude the photographs. "It makes no difference, of course, when a picture was taken, if the evidence shows that the conditions are the same as when the accident occurred, or when the evidence shows the difference, if there is any."[8] It has even been held that it is not necessary to prove the time of taking photographs where there has been no change in conditions.[9] The real test is whether the photographs represent with fair accuracy the place of the happening and the physical conditions surrounding it.[10] And photographs are admissible even when they contain points of difference between the time of taking and the time of the accident or injury, provided such differences are disclosed by testimony and made clear to the jury.[11] In this case the photographs violated none of the rules just stated, and they might well have been used either as secondary or demonstrative evidence, or both. To reject them completely was erroneous.

■ Since the case must be retried we think it wise to discuss briefly another error assigned by appellant, dealing with the trial court's refusal to direct a verdict for defendant on the whole case. As to this, all that can be said here has already been said with clarity and finality by our United States Court of Appeals in the Fisher case, cited above. Plaintiff made out her prima facie case by proving that the mouse was in the bottle from which she drank, that her illness resulted and that the preparation, bottling, sealing, and distribution of the drink was exclusively under the control of defendant. That showing, weighed against defendant's answering evidence, made a case for the jury.

The final assignment of error deals with the alleged excessiveness of the verdict and the refusal of the trial judge to order a remittitur. This we need not discuss, in view of our ruling on the other points.

Reversed and remanded with instructions to award a new trial.

RICHARDSON, Chief Judge (dissenting).

I find myself unable to agree with my associates. There was undisputed evidence that the carcass of a mouse formed a part of the contents of the bottle when opened by the retail vendor in the presence of and delivered to plaintiff's messenger. The only reasonable theories to account for its presence in the bottle were (a) that it was there when delivery was made to the retail vendor, or (b) that while in the custody of the latter the bottle was tampered with, the cap removed, and the mouse voluntarily or involuntarily introduced, and the bottle re-capped. As between a natural

7 See footnote 5, supra.

8 Powell Bros. Truck Lines v. Barnett, 196 Ark. 1082, 121 S.W.2d 116, 118.

9 Baltimore City v. State, 132 Md. 113, 103 A. 426; Pritchard v. Austin, 69 N. H. 367, 46 A. 188.

10 Altemus v. Talmadge, 61 App.D.C. 148, 58 F.2d 874; Norton v. Anderson, 164 Wash. 55, 2 P.2d 266; Miller v. Silvester, 140 Cal.App. 345, 35 P.2d 387; Washington v. Seattle, 170 Wash. 371, 16 P.2d 597, 86 A.L.R. 113.

11 Gaughan v. Michigan Int. Motor Freight, 7 Cir., 94 F.2d 266; Dyson v. New York, etc., R. Co., 57 Conn. 9, 17

A. 137, 14 Am.St.Rep. 82; Androczycyn v. Spaulding, 194 Ill.App. 471; Young v. Dunlap, 195 Mo.App. 119, 190 S.W. 1041; Turner v. Cocheco Mfg. Co., 75 N. H. 521, 77 A. 999; Amsler v. New York, 172 App.Div. 63, 158 N.Y.S. 219; Sherlock v. Minneapolis, etc., R. Co., 24 N. D. 40, 138 N.W. 976; Carney v. Pennsylvania R. Co., 63 Pa.Super. 138; City of San Antonio v. Talerico, Tex.Civ.App., 78 S.W. 28; Dederichs v. Salt Lake City R. Co., 14 Utah 137, 46 P. 656, 35 L. R.A. 802; Aldrich v. Boston, etc., R. Co., 91 Vt. 379, 100 A. 765.

and an unnatural assumption, in the absence of other proof, I think a jury would be bound to find that when sold to plaintiff the bottle was in the same condition which existed when it was sealed and delivered by the defendant. This was the holding in Middlesboro Coca-Cola Bottling Works v. Campbell, 179 Va. 693, 20 S.E.2d 479, 481.

There the court also applied to bottled coca-cola the rule that:

"Foreign substances in food packages not tampered with are in themselves evidence of negligence. When that is shown, a prima facie case has been made out, which, if not overborne by evidence for the defendant, is sufficient to sustain a verdict for the plaintiff."

And there the court also said:

" * * * if the machinery worked properly no foreign matter would have remained in the bottle after it had been washed and sterilized; and even if, by the failure of the machinery to perform its function, foreign matter did remain, due care in the preliminary and final inspections would necessarily have disclosed its presence. We know, however, that machinery breaks down and employees at times fail to perform their assigned duties. This is manifested by the numerous cases of this character in which recovery has been sought."

I think these statements correctly represent the legal presumptions applicable here. Unfortunately for the defendant it could not and so did not attempt to furnish evidence as to the passage of the particular bottle through its plant. It could only show the efficiency of its machinery and care in providing employees to operate and inspect. In both respects I think the evidence was adequate without photograph or view. But the perfection of its machinery, granting all that was testified concerning it or would have appeared from photograph and view, merely emphasized the existence of negligence in its proper operation.

Whether photographs should be admitted, or a view of premises ordered, rests in the reasonable discretion of the trial judge. The case had resolved itself in my opinion to a simple issue: Whether negligence had occurred in the human processes of operation and inspection. I do not think that a representation of the machine by photograph, or a view accompanied by a demonstration of the customary manner of operation, would have materially aided the proper decision of the case, and I am unable to agree that the action of the trial court was an abuse of its discretion.